FERGUSON v. BARTHOLOMEW, *et al. Plaintiffs in Error.*

1.  **Military Bounty Lands:** RECORDED DEED: NOTICE. A convey-
    ance of military bounty land which, without being either acknowl-
    edged or proven, was recorded in the county where the land lay
    prior to the passage of the act of February 2d, 1847, entitled " An
    act to quiet vexatious land litigation," (Sess. Acts, p. 94) is within
    the operation of section 8 of that act, (re-enacted as § 35, Chap.
    143, Gen. Stats. 1865) and from and after.that date imparted notice
    to all persons of its contents. (*Crispen v. Hannavan,* 50 *Mo.* 416, *limit-
    ed and explained.*)

2.  **Adverse Possession:** HOSTILE ENTRY: STATUTE OF LIMITATIONS.
    When possession of land has been restored by legal process to one
    who had been deprived of it by an adverse claimant, the entry of
    the latter will not, in a subsequent action of ejectment, be allowed
    the effect of destroying the continuity of possession or of interrupt-
    ing the running of the statute of limitations in favor of the.former,
    if it was made with force and strong hand, nor unless suit was com-
    menced upon it within one year after it was made, and within the
    time limited for bringing an action of ejectment.

*Error to Chariton Circuit Court*—HON. G. D. BURGESS, Judge.

*Waters & Winslow* for plaintiffs in error.

1.  The entries of Ferguson and his tenants, although
made under the paramount title, stand on the same ground
as though made by naked trespassers. *Spalding v. May-
hall,* 27 Mo. 377 ; *Harris v. Turner,* 46 Mo. 438 ; *Robinson
v. Walker,* 50 Mo. 19 ; *Dilworth v. Fee,* 52 Mo. 130.

2.  The right of entry, upon lands held adversely,
either as an extra judicial remedy to regain the possession,
or as a means of arresting the statute of limitations, never
obtained a foothold in this State.   The early history of the
Louisiana Territory, and the subsequent course of legisla-
tion and adjudication in the Missouri Territory and the
State of Missouri, afford no countenance to the idea that
the common law doctrine of entry came in with the act of
January 19th, 1816, (1 Terr. Laws, p. 436,) adopting cer-
tain portions of the common law and the British Statutes,
or with the subsequent limitation act of December 17th,

1818. (1 Terr. Laws, p. 598, § 1). The effect of the statute of forcible entry and detainer, passed August 19th, 1813, (1 Terr. Laws, p. 268,) was, alone, sufficient to prevent the introduction of common law entries either by the act of 1816 or 1818. *Emerson v. Sturgeon*, 59 Mo. 404; *Lecompte v. Wash*, 9 Mo. 547; *Cathcart v. Walter*, 14 Mo. 17; *Dennison v. Smith*, 26 Mo. 487; *Wunsch v. Gretel*, 26 Mo. 580.

3. Ferguson's last entry was made March, 1870, and his first action of ejectment was commenced September 1st, 1871. His entry, therefore, was of no avail, suit not having been commenced within the year.

4. Ferguson's entries, having been forcible, did not have the slightest effect upon the adverse possession o plaintiffs in error. They were promptly met by proceedings in forcible entry and detainer, under which possession was twice restored to plaintiffs in error; and the effect of these proceedings was to restore them to the possession, which, by relation, or the operation of a kind of *jus postliminii* under the statute, so to speak, revested in them as though they had never been driven out by the hostile force. These proceedings were acts of possession performed with reference to the land. *Benest v. Pipon*, 1 Knapp 70; 1 Domat's Civil Law, 889, Sec. 2234; *Smith v. Lorillard*, 10 Johns. 338, 351; *Hamilton v. Boggess*, 63 Mo. 247; 3 Blackst. Comm., p. 210; 4 Kent's Comm., p. 119; Waterman on Trespasses 873, § 931; 9 Bac. Abr. Tit. Trespass, C.; *Morgan v. Varick*, 8 Wend. 587; *Robinson v. Walker*, 50 Mo. 19; *Pella v. Scholte*, 24 Iowa 293; *Doe v. Eslara*, 11 Ala. 1028; *Norvell v. Gray*, 1 Swan (Tenn.) 96.

5. The deed from McKeen to Woods, being duly proven when recorded, is to be considered as a recorded deed since March 20th, 1868, when it was admitted to record. The deed from McKeen to Casey was not acknowledged or proven when it was recorded, and, therefore, had no right upon the record. The act of 1847, now W. S. 595, §§ 35, 36, did not include deeds to military

bounty lands.   *Crispen v. Hannavan*, 50 Mo. 415; *Ryder v. Fash*, 50 Mo. 476.

*H. Lander* for defendant in error.

1.   The deed from McKeen to Casey, dated March 11th, 1822, and recorded April 2nd, 1842, it being at the time "neither proven nor acknowledged," was duly recorded by operation of the 8th section of the act of February 2nd, 1847, now Sec. 35, p. 595, 1 Wag. Stat., and from the time of the passage of that act imparted notice.   If it be said that this section does not apply, because the deed affects military bounty land, as to which another provision is made in the act concerning conveyances, (1 Wag. Stat., p. 278, §§ 35 to 38,) the answer is that this 35th section applies only to a class of deeds made in other States which have been acknowledged or proven according to the laws of the State where made.   *Tully v. Canfield*, 60 Mo. 100; *Totten v. James*, 55 Mo. 496.

2.   Ferguson's entries under his title, first in October, 1868, followed up by actual possession to March 29th, 1869, and again on the first of March, 1870, followed up to July 10th, 1871, certainly were sufficient to interrupt the statute of limitations.   The entries were made *animo clamandi*, accompanied with absolute dominion and expulsion of his adversary.   Ang. Lim. § 378; *Altemas v. Campbell*, 9 Watts 28.

3.   No particular form is required in making an entry to stop the running of the statute of limitations.   1 Hilliard Real Prop., p. 42, (3rd Ed.); *Woods v. Woods*, Grant's Cases, (Penn.) 229; *Robison v. Swett*, 3 Greenleaf R. 324; Ang. Lim. § 386.

4.   An entry, before the statute period has run, destroys the efficacy of all prior possessions, so that to gain a title under the statute, a new adverse possession for the full time must be had.   Ang. Lim., § 413; *Pederick v. Searle*, 5 Serg. & R. 236.

5. Our statute recognizes entries to stop the running of the statute. 2 Wag. Stat., p. 916, § 2; *Bradley v. West,* 60 Mo. 33.

6. The adverse possession must be continuous, without entry, claim or action on the other side. *Andrews v. Mulford,* 1 Haywood 311; *Park v. Cochran,* 1 Haywood 178; Ang. Lim., § 413, (note 2.)

7. There can be but one seizen of land at the same time. *Putnam v. Fisher,* 34 Maine 172.

8. The complaint is that Ferguson entered violently and forcibly. Every actual entry implies a trespass. Coke Litt. 245, b.

Hough, J.—This was an action of ejectment, instituted on the 1st day of May, 1872, for military bounty lands lying in the county of Chariton, Mo., in which the plaintiff had judgment. The plaintiff and the defendant claim through a common source of title. The plaintiff claims title under a deed from the common grantor, dated March 11th, 1822, executed in the State of Tennessee, and recorded in Chariton county on the 2nd day of April, 1842. This deed when recorded, was neither proven nor acknowledged. Plaintiff connected himself with this conveyance by a regular chain of title papers, all of which were recorded April 2nd, 1842, except the deed to himself, which was recorded June 19th, 1848. The defendant claims under a deed executed, by the common grantor, on the 17th of November, 1821, with which he connected himself by a regular chain of conveyances, all of which were recorded March 20th, 1868. The defendant also relied on the limitation of two years applicable to suits for military bounty lands, and proved the following facts: "That, in the month of October, 1868, one Krassig took the possession of the land sued for, and built a house on it; that shortly afterwards and about the time the house was completed, the plaintiff took forcible possession of the house, and put his tenants in it; that Krassig took the possession, and

built the house, under a contract for the purchase of the land, made with Lucius Salisbury, who is one of the grantors in defendant's chain of title; that some months after plaintiff took the possession of the premises from said Krassig, the said Krassig commenced suit against the tenants of said plaintiff, and on the 8th day of February, 1869, recovered judgment in forcible entry and detainer against them for said land, before a justice of the peace; that a writ of restitution was issued on said judgment, and was placed in the hands of the proper constable, who, on the 29th day of March, 1869, executed the same by putting the said Krassig in possession of the said premises; that, on the said day, the sale of said land by Salisbury to said Krassig was annulled, and the said Salisbury took the land back from said Krassig; that, on the said day the said Salisbury rented said premises to one Freeman, who went into the possession thereof, and remained until about the 1st day of March, 1870; that, about said time the plaintiff again took forcible possession of said premises, and put his tenants on the same; that, on the 14th day of April, 1870, the said Salisbury commenced a suit for forcible entry and detainer against Stephen Wilson et al., who were the tenants of plaintiff, before a justice of the peace, and, on the 8th day of September, 1870, recovered judgment for the possession of said premises; that defendants appealed from said judgment to the circuit court of Chariton county, Missouri, where, on the 23rd day of May, 1871, the said Salisbury again recovered judgment for the possession of said premises, and, on the 10th day of July, 1871, was put in the possession of said premises by a writ of restitution, issued on said judgment; and that said Salisbury and his grantee, Thomas, one of the defendants in this case, by themselves and tenants, have ever since held the possession of said premises, and made valuable improvements thereon." It was admitted by the defendants, at the instance of the plaintiff, that the plaintiff commenced an action of ejectment, for the land in suit, in

the Chariton court of common pleas, a court of competent jurisdiction, against the tenants of Salisbury, September 1st, 1871, which was continued until April 2nd, 1872, when plaintiff suffered a non-suit, and commenced this action May 1st, 1872.

Sections 35 to 38, inclusive, of chapter 109 of the General Statutes, in relation to conveyances, first enacted 1. MILITARY BOUN- in 1843, provide, that every instrument of TY LANDS. recorded deed: notice. writing executed out of this State, and within the United States, which conveys or affects military bounty lands in this State, and which is acknowledged or proved according to the laws and usages of the place where executed, which has been filed for record and recorded in the proper office, although such filing or recording may not have been in accordance with any law in force, shall impart the same notice as if the acknowledgment or proof had been made in accordance with law; and that certified copies of such instruments, or of the record thereof, shall, upon proof of the loss or destruction of the original instrument, be read in evidence with like effect and on the same conditions as the original instrument. By the 35th section of chapter 143 of the General Statutes in relation to evidence, first enacted February 2nd, 1847, it is provided that the records made by the recorder of the proper county, by copying from any deed of conveyance, that has neither been proven nor acknowledged, or which has been proven or acknowledged, but not in accordance with the law in force at the time the same was done, shall impart notice to all persons of the contents of such instruments, and all subsequent purchasers and mortgagees shall be deemed to purchase with notice thereof.

In *Crispen v. Hannavan*, 50 Mo. 416, it was said that the 35th section of the chapter in relation to evidence, was not applicable to military bounty lands; but the remarks of the judge who delivered the opinion of the court in that case, must be construed with reference to the character of the conveyances then under consideration. Those

conveyances were executed out of the State, and were ac-
knowledged before a notary public, one in the District of
Columbia, and the other in the State of Kentucky, and the
court held that their admissibility as evidence was to be
determined by reference alone to the 35th, 36th and 37th
sections of the statute of conveyances, relating to military
bounty lands; and as there was no testimony showing that
at the date of their execution a notary public was author-
ized to take the proof or acknowledgment thereof, either
in the District of Columbia or in the State of Kentucky,
they were properly excluded. Of course they could not
have been admitted, in any court, under the 35th and 36th
sections of the chapter on evidence, until it was shown
that they had not been acknowledged or proven according
to law. The laws of the several States are to be proven
like other facts, and there was no evidence on that subject.
It was obviously not intended to declare that the 35th sec-
tion of the chapter on evidence, can in no case be held to
include conveyances of military bounty lands. Convey-
ances executed within this State, for instance, which are
neither proven nor acknowledged, would be covered by
this section, whether they passed the title to military
bounty lands or other lands; and if neither proven nor ac-
knowledged, we can perceive no good reason why they
should not be held to be included within the provisions of
this section, although executed outside of this State.
Those conveyances only are excluded from the operation
of the 35th section of the statute on evidence, which are
included in the 35th section of the statute on conveyances,
and those included in the latter section are such, only, as
have been executed and acknowledged out of this State'
and within the United States, according to the law of the
place where executed. *Tully v. Canfield*, 60 Mo. 100.
That such was the law prior to the passage of the act of
March 22nd, 1873, (acts 1873, p. 44,) is shown by the opin-
ion of this court in *Totten v. James*, 55 Mo. 496, wherein
the act of 1873 was declared to be but a legislative inter-

pretation of sections 35 and 36 of the statute on evidence. That act of Assembly added nothing in reality to the scope and efficacy of those provisions, and was doubtless prompted by the general character of the remarks made in *Crispen v. Hannavan,* which was decided in 1872. As the deed from McKeen to Casey was neither proven nor acknowledged at the time it was recorded, April 2nd, 1842, it clearly comes within the provisions of the 35th section of the statute on evidence, and consequently affected all subsequent purchasers with notice from the 2nd of February, 1847. We are of opinion, therefore, that the paper title of the plaintiff is the better title.

This being the case, the plaintiff is entitled to recover, unless the defendants have shown an adverse possession for the period of two years. The plaintiff contends that his entry and possession thereunder in 1868, and his subsequent entry and possession in 1870, destroyed the continuity of the defendant' possession and interrupted the operation of the statute. It may well be doubted whether the common law righ of entry, though apparently recognized in the second section of our statute of limitations, has any existence in this tate; if it has, it is certainly of no practical importance. Whether the construction, therefore, which has been given to our statute of forcible entry and detainer, which was enacted before the adoption of the common law by us, is such as to make all common law entries unlawful, need not now be determined, as, under our statute, no entry can be held to be sufficient or valid as a claim, unless suit be commenced thereon within one year after making uch entry, and within the time limited for bringing an ction of ejectment. The plaintiff's entries in the present case can, consequently, avail him nothing, even if they could be considered as common law entries, inasmuch as suit was commenced by him thereon, within one year after the were made.

Besides, the entries proven to have been made by the

2. ADVERSE POS- SE ,ION : hostile en y : statute of lim tations.

plaintiff, were not, in their character, such as were recognized at common law, as they were made with force and strong hand. Such entries are not only in violation of our forcible entry and detainer law, but they were prohibited by the British Statutes in force prior to the fourth year of James the First. " The remedy by entry," says Blackstone, " must be pursued according to statute 5 Ric. II St. 1 C. 8, in a peaceable and easy manner; and not with force and strong hand. For, if one turns and keeps another out of possession forcibly, this is an injury of both a civil and a criminal nature. The civil is remedied by immediate restitution, which puts the ancient possessor in *statu quo.*" Com., Vol. 2, 179. A rule which would allow the owner of land to arrest the operation of the statute of limitations by a forcible intrusion upon the peaceable possession of an adverse occupant, and his expulsion from the premises, would be followed by the most pernicious consequences. Violence and disorder would speedily ensue, and for the peaceful methods of the law would be substituted the hostile conflicts of opposing claimants. If the owner of land wrest the possession by force from the adverse occupant, when restitution is made by law, the period during which the forcible possesseion was held by the owner, will be added to, and become a part of, the adverse possession of such occupant. *Robinson v. Walker*, 50 Mo. 19 ; *Pella v. Scholte*, 24 Iowa 283. It follows from the foregoing views, that the forcible intrusion of the plaintiff into the possession of the premises sued for, did not suspend the operation of the statute of limitations, and on the adverse possession shown by the defendant, he was entitled to a verdict. The judgment will be reversed and the cause remanded. All concur.

REVERSED.