Gould et al. v. Carr and Emmerly, Exrs.. et al.—Syllabus.

RUTLEDGE GOULD ET AL., HEIRS OF JAMES M.
GOULD, DECEASED, FOR THE USE OF GEORGE B.
VANDERPOOL, ADMINISTRATOR OF JACOB VANDER-
POOL, DECEASED, APPELLANTS, VS. JOHN T. CARR
AND HENRY M. EMMERLY, EXECUTORS OF DELPHI
EMMERLY, DECEASED, ET AL., APPELLEES.

1. The establishment of a uniform rule by the commissioners acting
   under the act of Congress for the collection of direct taxes that
   they would receive such taxes from no one but the owner of
   the land in person, avoids a sale by said commissioners under
   such proceedings, and a tender of the taxes was made unneces-
   sary by such a rule.

2. The possession necessary to confer title under an adverse holding
   must be actual, continuous and adverse to the legal title for
   the statutory period to bar the suit, and the adverse possessor
   must not yield or surrender his possession under the pressure of
   any legal procedure instituted to oust him, which he can suc-
   cessfully resist, and if he does so, and an entry adverse to him
   is made, the continuity of his possession will be broken. *Contra*
   as to adverse possession interrupted by force or violence and
   promptly regained by legal methods. *Townsend vs. Edwards,*
   25 *Fla.*, 582, 6 *South. Rep.*, 212, *examined and limited.*

3. At common law the death of a sole plaintiff in real actions before
   judgment abated the suit, and such actions can only be revived
   in the name of the heir at law, in whose favor a new cause of
   action arises upon the death of the ancestor by legislative au-
   thority.

4. The act of November 1828, Section 77, page 830 McClellan's Di-
   gest, declaring what actions shall die with the person and what
   shall survive, provides that those that do survive may be main-
   tained in the names of the representatives of the deceased.
   Real actions are among those that survive the death of a plain-
   tiff, and under rules 94 and 95 specially made for the govern-
   ment of Circuit Courts in actions of ejectment, such an action
   may be revived in the names of the heirs at law.

Appeal from the Circuit Court for St. Johns
county

## STATEMENT.

A suit of ejectment was instituted on the 3rd day of January, 1876, in the Circuit Court for St. Johns county by James M. Gould, for the use of Jacob Vanderpool, against Henry and Wiley Jenkins to recover possession of a certain described lot of land situated in the city of St. Augustine in said county.

The plea of not guilty, and also a further plea that neither the plaintiff, his ancestor, predecessor or grantor had been seized or possessed of the premises in question within seven years before the commencement of the suit, were filed by the named defendants on the rule day in March, 1876, and no further proceedings were had in the case until February, 1889. Notice was served on counsel for defendants on the 16th day of February, 1889, that application would be made to the Circuit Judge on the 25th day of that month for an order making Geo. B. Vanderpool, administrator of the estate of Jacob Vanderpool, deceased, and Rutledge Gould, Edward Gould, James Gould, Hester Flynt, Sarah Gould and Lydia Gould, heirs at law of James M. Gould, deceased, plaintiffs in said suit upon the suggestion of the deaths of the original plaintiffs. An order was made on the 26th of the same month reciting that the deaths of James M. Gould and Jacob Vanderpool had been suggested, and that certified copy of the letters of administration granted to Geo. B. Vanderpool on the estate of Jacob Vanderpool, deceased, had been filed, and directing that the said heirs at law of James M. Gould, deceased, be made parties plaintiffs in the suit in place of the said decedent Gould, and that Geo. B. Vanderpool, administrator, be made party plaintiff in place of Jacob Vanderpool, deceased.

JANUARY TERM, 1894. 525

Gould et al. v. Carr and Emmerly, Exrs., et al.—Statement of Case.

Subsequently the cause was referred to John C. Cooper, Esq., an attorney-at-law, as referee for trial, and the following agreement in writing signed by counsel for plaintiffs and defendants was filed in the case with the referee, *viz:*

"In the Circuit Court,
St. Johns County.

Rutledge Gould et al., for use of Geo. B. Vanderpool, Admr., etc.

vs.

Henry Jenkins, Wiley Jenkins, Henry Emmerly, and John T. Carr, Executors, etc., of the estate of Delphi Emmerly.

Stipulation of Parties.

It is hereby stipulated and agreed by the parties to the above action as follows, to-wit:

First. That the lands and premises in controversy in said action were sold in December, A. D. 1863, for taxes under the Direct Tax laws of the United States of America then in force; that at said sale James W. Allen became the purchaser, to whom a certificate of purchase was issued by the tax commissioners under said laws, and that on or about January 4th, 1864, the said James W. Allen, for value received, assigned and transferred such certificate to one Edmund Hill, who was at once admitted to the possession of the said lands and premises by the said Allen. This admission shall not prejudice the plaintiffs from making proof of any fact or facts that will impeach the validity of such sale.

Second. That Edmund Hill on or about the sixteenth of April, A. D. 1881, being then in full possession, executed and delivered to Delphi Emmerly, his daughter, a deed of conveyance of the said lands and

premises whereby all the right, title, interest and estate of said Hill in said lands were conveyed to said Emmerly; that under such conveyance the said Emmerly was let into the possession of said lands and premises and held the possession thereof until she died, to-wit: 16th day of February, 1886.

Third. That on the 22nd day of December, 1885, Delphi Emmerly duly executed her last will and testament, whereby she devised the said lands and premises to her two children, Edward M. Thomas and E. M. Emmerly; that by said will the defendants, Henry M. Emmerly and John T. Carr, were duly appointed executors thereof, and that they duly qualified as such executors on the —— day of ——, A. D. 1886, and thereupon entered upon the discharge of their duties as such executors; and said will was duly admitted to probate in the proper office and was properly executed.

Fourth. That Edmund Hill died before the death of the said Delphi Emmerly.

Sixth. That the plaintiffs who sue for the use of Geo. B. Vanderpool, as administrator of Jacob Vanderpool, are the lawful heirs at law of James M. Gould, and that on and prior to December 21st, 1863, the said James M. Gould was lawfully in possession of the said land and premises under a valid claim of title as sole heir of Elias B. Gould, deceased.

Seventh. That James M. Gould and Jacob Vanderpool are dead, and that Geo. B. Vanderpool is the duly constituted administrator of the estate of the said Jacob Vanderpool, deceased.

Eighth. That on or about the 13th day of March, A. D. 1870, the said James M. Gould executed and delivered to Jacob Vanderpool a deed of conveyance of said lands and premises, and that at the time of the

execution and delivery of said deed Edmund Hill was in the possession of the said lands and premises, claiming adversely and in hostility to the title of the said James M. Gould, conveyed all his right, title and interest in the lands to said Vanderpool.

Ninth. That John T. Carr and Henry M. Emmerly, as executors, etc., shall duly appear and be made parties defendants to said action before the trial thereof."

In compliance with the stipulation Henry M. Emmerly and John T. Carr, as executors of the will of Delphi Emmerly, deceased, appeared and filed a plea of not guilty.

The second plea of the defendants Henry and Wiley Jenkins, setting up the statute of limitations, was stricken out by the referee on motion of plaintiffs on the ground that such defense could be proven under the general issue, and upon final hearing judgment was rendered in favor of defendants. Plaintiffs appealed to this court.

The other facts necessary to be stated will appear in the opinion of the court.

*Rude & Dewhurst* for Appellants.

*H. Bisbee* for Appellees.

MABRY, J., (after stating the facts:)

It appears from the admitted facts and the testimony in this case that James M. Gould, as sole heir of Elias Gould, deceased, was rightful owner and in possession of the lot of land in question on the 21st day of December, 1863, and that the lot was sold in that month under the direct tax laws of the United States to James W. Allen, who received a certificate of purchase from

the tax commissioners, and in January, 1864, conveyed the lot to Edmund Hill. Hill immediately took possession of the lot under his purchase from Allen and remained in possession until the 30th day of October, 1871, when he was dispossessed by the sheriff of St. Johns county by virtue of a writ of possession based upon a judgment in ejectment for the possession of said lot, rendered on the 25th day of that month in favor of Jacob Vanderpool, and against Hill. Vanderpool's action of ejectment was based upon a deed of conveyance of the lot to him from James M. Gould, bearing date March 13th, 1870, but it is conceded that at the time of Gould's conveyance to Vanderpool, Hill was in the actual adverse and hostile possession of the lot. After Vanderpool had been put into possession, which, it appears was five days after the rendition of the judgment, Hill presented an appeal to this court and succeeded in having the judgment reversed and a new trial awarded. Hill vs. Vanderpool, 15 Fla., 128. After the reversal of the judgment Hill was restored to the possession of the lot on the 9th day of June, 1875, by virtue of a writ of restitution issued by the Circuit Judge to the sheriff, and Hill and those claiming under him and his title have been in possession ever since.

On September 22nd, 1875, Jacob Vanderpool entered a nonsuit in his ejectment action against Hill, and on the 3rd day of January, 1876, suit of ejectment was commenced for the possession of the lot in the name of James M. Gould for the use of Jacob Vanderpool, against Henry and Wiley Jenkins, and out of this suit has grown the proceedings now before us. Pleas were filed for Henry and Wiley Jenkins in March, 1876. James M. Gould died on the 4th day of February, 1878. Jacob Vanderpool died some time

between 1876 and April, 1888, and the proceedings to revive the suit in the names of the heirs at law of Gould and the administrator of Vanderpool, as shown by the statement herewith filed, were had in February 1889.

Hill conveyed the lot in 1881 to Delphi, his only child, who first married Thomas, and after his death, H. M. Emmerly, and she died in February, 1886, leaving a will in which John T. Carr and H. M. Emmerly are named executors. Hill died between 1881 and 1885, and during the lifetime of his daughter Delphi.

The tax sale to Allen in 1863, under the direct tax proceedings, was void. If it can not be affirmed on the testimony before us that a tender of the taxes assessed on the lot of land and for which it was sold, had been made before sale, it is clearly shown, we think, that the tax commissioners, or a majority of them, before the sale was made, established a uniform rule that they would receive the taxes assessed on property in the city of St. Augustine from no one but the owner in person, and that where such owner was in the Confederate lines he was required to appear in person and pay his own taxes. Under the decision of United States vs. Lee, 106 U. S., 196, and authorities there cited, the tax sale in question was void. This point is not much insisted on by counsel for appellees, but the main reliance for an affirmance of the judgment is placed upon an adverse possession of the lot by Hill and those claiming under him for the statutory period to bar the suit.

The principal contentions for appellee are, first, that Hill's possession was not interrupted in consequence of his dispossession from October, 1871, to June, 1875,

by virtue of the writ issued on the Jacob Vanderpool judgment subsequently reversed; and, second, should this not be correct, the proceedings in the names of the heirs of James M. Gould, deceased, can not be regarded as a revivor of the suit commenced by said decedent, but must be considered as a new suit, by the heirs from the time they were made parties plaintiffs, and that the statute of limitations will run against them from the death of their ancestor up to the commencement of their suit. An examination of the testimony has satisfied us that the possession of Hill from January, 1864, up to the time he was dispossessed in 1871 was adverse and that his possession after his restoration in 1875, as well as the possession of those claiming under him since, has been adverse and hostile to both Gould and Vanderpool and all others, and will sustain a claim of title by adverse possession if the limitations of the statute as to the time have been fully met. If Hill's possession was not broken by his dispossession in 1871, and he and those claiming under him must be considered as still in possession from that time on, it is clear that the action commenced by Gould in January, 1876, was barred. The statute of limitations of 1872 went into effect on the 27th day of February of that year, and the action against Hill, if we consider him as remaining in possession, would have been barred in six months from the approval of the act. Spencer vs. McBride, 14 Fla., 403; Wade vs. Doyle, 17 Fla., 522. If Hill's dispossession operated to break his adverse holding, then it commenced anew from the time he was restored to possession in 1875. Suit was not brought by Gould within six months from the approval of the act, and hence the necessity of deciding the effect of Hill's dislodgment under the ejectment suit

instituted by Vanderpool. The deed from Gould to Vanderpool in 1870 was void as to Hill for the reason that the latter was then in adverse possession of the lot. Levy vs. Cox, 22 Fla., 546; Edwards vs. Parkhurst, 21 Vt., 472; Hamilton vs. Wright, 37 N. Y., 502; Betsey vs. Terrance, 34 Miss., 132. The case was not reversed in this court on this account, but the facts stated are admitted, and Vanderpool realizing his situation, entered a nonsuit. The character of adverse possession essential to give title to land has been several times considered by this court, but the facts of the cases considered did not necessitate a decision of the point now presented. Wade vs. Doyle, *supra;* Seymour vs. Creswell, 18 Fla., 29; Townsend vs. Edwards, 25 Fla., 582, 6 South. Rep., 212, and Watrous vs. Morrison, 33 Fla., 261, 14 South. Rep., 805. It is said in Townsend vs. Edwards, in speaking of adverse possession: "If interrupted, even by fraud or force, and the possession be recovered by a peaceable or forcible entry, or by process of law, the continuity is broken, and the statute begins to run only from the time of the re-entry." This, however, was said in argument, as will he seen by an examination of the case, its facts not calling for a decision of the point. In Missouri it has been decided that a forcible entry by the owner upon an actual adverse possession of another does not interrupt such possession, if an action for the forcible entry is commenced within a reasonable time and prosecuted to a successful termination. Ferguson vs. Bartholomew, 67 Mo.; 212; Cary vs. Edmonds, 71 Mo., 523, In a case in Ohio it appeared that the adverse claimant improved a part of the tract and continuously occupied it by tenants from the Spring of the year 1845 to the Winter of 1863-4, when the house on the place was torn down by neigh-

bors on account of objectionable tenants placed on the land, and the material of the building was moved away by the tenants early in 1864. About the same time most of the fencing was stolen, and the greater part of the cleared land was common. It also appeared that from the time the house was pulled down to the Spring of 1865 no tenant actually resided on the land, but during that time the claimant, through his agent, continued to pay taxes and to exercise all other acts of ownership and control that was possible under the circumstances. No intention of abandoning the property was entertained, nor was any adverse entry or claim made. It was said by the court that no principle of law or equity would make such acts of lawlessness inure to the advantage of the plaintiffs. Clark vs. Potter, 32 Ohio St., 49. Decisions in Alabama affirm that the forcible interruption by a naked trespasser redressed by legal remedies will not, as to him, avail to break the continuity of an adverse possession. Ladd vs. Dubroca, 61 Ala., 25; Beard vs. Ryan, 78 Ala., 37. In harmony with the views expressed in the decisions referred to is an able opinion of Judge Dillon in the case of City of Pella vs. Scholte, 24 Iowa, 283. No one, it would seem, should be allowed to avail himself of the advantages of the law which he has gained by its violation. But Vanderpool did not oust Hill by force. He was turned out by virtue of a writ of possession based upon a judgment in ejectment, subsequently reversed, it is true, and afterwards the suit discontinued. It is insisted that before such ouster can be considered as a break of Hill's possession it must be shown that the suit was successfully prosecuted and resulted finally in a change of possession. There is authority for the position that a judgment in ejectment establishes simply the right of plaintiff to the

possession of the land sued for, and unless it is fol-
lowed by entry into possession, either by writ of pos-
session, or without it with the consent, surrender or
abandonment of defendant, such judgment can have
no effect on defendant's continued and uninterrupted
adverse possession for the prescriptive period.  Bright
vs. Stevens, 1 Houston (Del.), 240; Jackson vs. Havi-
land, 13 Johnson, 229; Carpenter vs. Natoma W. & M.
Co., 63 Cal., 616; Smith vs. Trabue, 1 McLean, 87;
Kennedy's Heirs vs. Reynolds, 27 Ala., 364.   There
are decisions to the contrary.   There was no ultimate
recovery by Vanderpool in his suit, and the possession
which he gained on the judgment in the trial court was
restored to Hill, but there was an actual possession by
Vanderpool from October, 1871, to June 1875.   Coun-
sel have not cited, nor have we been able to find, a
direct adjudication as to the effect of such a possession
on the adverse claim of an occupant.   The statute de-
clares that in actions of the character of this one, the
person establishing a legal title to the premises shall
be presumed to have been possessed thereof within the
time prescribed by law, and the occupation of such
premises by any other person shall be deemed to have
been under and in subordination to the legal title, un-
less it appear that such premises have been held and
possessed adversely to such legal title for seven years
before the commencement of such action.   There is
here a clear requirement of a continuity of possession
on the part of the adverse claimant.   It is said in
Groft vs. Weakland, 34 Penn. St., 304, that if there
be one element more distinctly material than another
in conferring title where all requisites are so, it
is the existence of a continuous adverse possession
for the statutory period.   The adverse claimant
must "keep his flag flying, and present a hostile front

534　　　　　　SUPREME COURT.

Gould et al. v. Carr and Emmerly, Exrs.. et al.—Opinion of Court.

to adverse pretension." Stephens vs. Leach, 19 Penn. St., 262. The rule is stated in Core vs. Faupel, 24 W. Va., 238, as follows, *viz:* "Upon every discontinuance of the possession of the wrongdoer, the possession of the rightful owner is, by operation of law restored, and nothing short of an actual adverse and continuous possession for the statutory period can destroy his right or vest title in the wrongdoer. * * * He must show that such adverse possession has been continued, consecutive and unbroken for the statutory period. It is something done by him, not merely that which is left undone by the owner, that is to be considered. There can be no constructive adverse possession against the owner, when there is no actual possession which he could treat as a trespass and bring an action for; unless the adverse claimant is so in possession of the land that he may at any time be sued as trespasser the statute will not run in his favor; and although he may have taken actual possession, if he does not continue there so that he may be sued at any time as a trespasser during the prescriptive bar, he can not rely on the statute of limitations." To the same effect is the decision in Malloy vs. Bruden, 86 N. C., 251. The Supreme Court of the United States held in Armstrong vs. Morrill, 14 Wall., 120, that where lands owned by one individual but in the adverse possession of another, were forfeited to the State, and subsequently redeemed by the owner by virtue of a private act of the legislature, the continuity of the adverse possession was broken in point of law, and that such possession, though it might have been in fact continuous, was neither restored upon the redemption so far as to be continuous in law, nor was it so affected as that the person holding adversely could tack the adverse possession prior to the forfeiture to the possession subse-

quent to the redemption, and so make out a term of adverse possession. The necessity of the continuity of the adverse possession is emphasized in this case. An adverse claimant who was driven from the premises by Indians, and resumed possession as soon as it was safe to do so, was not permitted to compute the period of his absence under a plea of the statute of limitations. Fitch vs. Boyer, 51 Texas, 336. A possession vacated in obedience to a military order compelling all citizens who adhered to the Mexican cause to leave the country, was thereby interrupted. Holliday vs. Cromwell, 37 Texas, 437. The correct rule, we think, to be deduced from the law on the subject is that the adverse possessor, the inception of whose title is founded in wrong-doing, must not yield or surrender his possession under the pressure of any legal methods used to oust him, if he can legally prevent it, and if he does, and an entry adverse to him is made, the continuity of his possession will be broken. Vanderpool's judgment against Hill was rendered on the 25th day of October, 1871, and it appears that two notices of appeal were served, one on the 1st day of November, 1871, and the other on the 21st day of March, 1873, and the judgment was reversed in this court at the January Term, 1875. The presumption is that the appeal under the first notice was abandoned, and prosecuted under the second. No supersedeas was obtained, and no effort made to avoid or resist the writ of possession issued to put Vanderpool in possession, yet there were legal remedies provided to prevent such a result. So far as we know Hill took no steps to avoid the serious consequence to him of leaving possession, except of prosecuting the appeal, and we think he should have been prompt to use all legal means to retain the possession of the premises. Furthermore it will be observed that

the statute requires that the premises shall be held adversely to the legal title, and if we were to hold that as between Vanderpool and Hill, the latter must be regarded as continuing in possession from October, 1871, in analogy to the doctrine already referred to of not allowing a party to take advantage of a wrong done by himself, still the legal title to the lot, so far as concerned Hill, was in Gould. The view expressed in the West Virginia case referred to is that the adverse claimant must so continue in possession during the statutory period that the owner may sue him for the recovery of the land. The consequences to the owner would be serious if an occupant who had been ousted by a stranger, but afterwards restored to possession, could claim the bar of the statute, when as a matter of fact he was not in possession and could not be sued. The statute can not admit of such a construction. It may be said that while Gould's deed to Vanderpool was void as to Hill, and as between Gould and Hill the title was in the former, still it was held beneficially for Vanderpool. If Hill had remained in possession the opportunity of Gould to sue existed, notwithstanding Vanderpool's suit, and by relinquishing possession this opportunity was taken away. Vanderpool may have discovered his mistake in suing, and have urged a suit on the part of Gould if Hill had remained in possession.

The next objection is that the suit could not be revived in the name of the heirs of James M. Gould. Suit was commenced by Gould in January, 1876, against Henry and Wiley Jenkins, and about two years after pleas filed the plaintiff died. In February, 1889, notice was given of an application to revive the suit in the names of the heirs of Gould, and an order was made by the Circuit Judge reviving the suit in their

names as plaintiffs. No objection was made to such proceedings, but by consent the executors of Delphi Emmerly appeared, and the case was tried upon the issues presented by the pleas of not guilty filed by Henry and Wiley Jenkins and said executors. As no objection was made in the trial court to the proceedings to revive the suit in the names of Gould's heirs, so long a time after his death, we can not review such action of the court, provided such revivor could be made. On the record presented the only question is whether the suit could legally be so revived. Our conclusion is that it could. At common law the death of a sole plaintiff in real actions before judgment abated the suit. Green vs. Watkins, 6 Wheaton, 260; Macker's Heirs vs. Thomas, 7 Wheaton, 530; Cutts vs. Haskins, 11 Mass., 56; 2 Tidd's Practice, m. p., 1117; 1 Comyns' Digest, 120 (H 32). Upon the death of the ancestor the legal title under the common law rule descends to the heir at law, and thereupon a new cause of action arises in his favor to recover real estate withheld from him. If the suit of an ancestor can be revived upon his death in the name of the heir, it must be done under legislative authority. The provision in the act of February, 1861, Section 74, page 829 McClellan's Digest, that "in case of the death of a sole plaintiff, the legal representative of such plaintiff may, by leave of the court or a judge, enter a suggestion of the death, and that he is such legal representative, the action shall thereupon proceed," may contemplate a revivor in the name of an executor or administrator alone as contended for by counsel (Price vs. Strange, Mad. & Gel., 159), and the 35th rule of practice for Circuit Courts, framed under the statute mentioned, seems to add force to such contention. If this be true it does not follow that the revivor in the names of the heirs

at law of Gould was not properly made. The act of November 23, 1828, while it declares what actions shall die with the person, and what shall survive, provides that those that do survive may be maintained in the names of the representatives of the deceased. Section 77, p. 830 McClellan's Digest. The action here is one that does not die with the plaintiff. Rule 94 provides that "in all cases where the rules as to making parties in other actions can not be made applicable to actions in ejectment, and there is no rule in ejectment, or statute controlling the subject, then the persons may be made parties upon motion and notice, in such manner and upon such terms as the judge may direct." The 95th rule reads as follows: "If in any case there should be a person in interest or possession, other than the executor or administrator of the deceased plaintiff or defendant, who should be made a party plaintiff or defendant to the suit, he may be made a party, after such notice and such manner, and upon such terms as to pleading as the court or judge may direct. Such order may be made in vacation as well as in term." These rules were made by the court under the statute specially for actions of ejectment, which are real actions, and as such actions do not die with the plaintiff, but may be maintained in the name of the representative, and as the heir is the real representative of the ancestor, it is contemplated by the rule that such heir, being a person in interest, may be made a party and maintain the suit. The action to be maintained, as contemplated by the rule, is the one commenced by or against the deceased plaintiff or defendant. This being the case, it will be seen that the action before us was commenced about six months after Hill was restored to the possession of the land in 1875, the date when his adverse possession began.

after its former interruption.  He can not tack his last adverse possession to his former holding, and this left him without the requisite statutory bar.  The fact that the heir may not be entitled to recover mesne profits for the time the land was held in the lifetime of the ancestor, if such be the case, is no reason why the land itself may not be recovered.  The suit was commenced against Henry and Wiley Jenkins in January A. D. 1876.  Pending the suit against them, who were in possession under Hill, the latter conveyed the lot in 1881 to his daughter, whose executors voluntarily appeared and defended the suit in 1889.  The commencement of the suit under such circumstances must of course date from the time of the institution of the action against Henry and Wiley Jenkins.

For the reasons given the judgment must be reversed and a new trial awarded, and it will be so ordered.