Dennis **PIERCE, et al.,**
**Plaintiffs-Respondents,**

v.

**William M. AUSTIN, et al.,**
**Defendants-Appellants.**

No. WD33101.

Missouri Court of Appeals,
Western District.

March 15, 1983.

Rehearing Denied May 3, 1983.

William M. Austin, Walter R. James, Kansas City, for defendants-appellants.

Arthur A. Benson, II, Kansas City, for plaintiffs-respondents.

Before WASSERSTROM, P.J., and TURNAGE and CLARK, JJ.

WASSERSTROM, Presiding Judge.

The parties own neighboring properties, and defendants' driveway encroaches on the land to which plaintiffs own record title. Plaintiffs sued to quiet title, to which defendants counterclaimed in two counts. Count I of the counterclaim sought to establish a prescriptive easement in the driveway encroachment by reason of adverse use for more than ten years; while Count II sought to establish adverse possession to that encroachment. Each count of the counterclaim was tried at different times in two different courts and to two different juries, but both trials resulted in verdicts in favor of plaintiffs. From a judgment confirming fee simple title to the land in plaintiffs and decreeing that defendants have no claim or interest therein, defendants appeal. We affirm.

Defendants bought the property located at 4333 Oak, Kansas City, Missouri, in 1967 for the purpose of erecting and operating an apartment building. They proceeded to tear down an old structure on the land and constructed in place thereof a new building. As the final stage of that construction, a blacktop asphalt ten foot driveway was erected on the north side of the property leading to a parking lot in the rear of the building. The driveway was completed in December 1968 and was used continuously thereafter by the tenants in defendants' building, trash men, and various trades people.

In January 1978 plaintiffs bought their property lying immediately to the north of defendants' apartment building. At that time plaintiffs received a survey which showed that defendants' driveway encroached in an irregular manner upon plaintiffs' land, the encroachment being at the widest point between three to four feet. Plaintiffs thereupon commenced correspon-

dence with defendants in which plaintiffs suggested that defendants enter into financial arrangements to secure plaintiffs' permission to the continued use of the encroachment, but that correspondence proved unavailing.

Thereafter, on May 6, 1978, plaintiffs drove stakes into the north portion of the driveway where it encroached upon their land, connected those stakes by string, and posted a sign notifying defendants and their tenants that they could no longer use the portion of the driveway which had been so fenced off. Defendants learned of this almost immediately and within a short time they appeared on the scene, where some words were exchanged between the parties. However, there was no physical conflict of any kind between the parties. The police were called to the scene, and they advised plaintiffs that the stakes constituted a safety hazard and for that reason should not be permitted to remain. Defendants by that time had commenced removal of the stakes by a jack device. Plaintiffs testified that they acquiesced in that removal because of the safety factor.

On May 11, 1978, plaintiff Pierce delivered a letter to defendants which stated in part as follows: "Now that I have physically exercised my right to prevent you and your tenants from using that part of your drive which is on my property, I hereby give permission for you and your tenants to again use the drive for purposes of ingress and egress . . . Permission for this use of my property . . . is only temporary and does not convey any permanent right, title or easement, and may be revoked at any time. . . ."

On October 17, 1978, plaintiffs filed the present quiet title suit. In that action they alleged that they had a right to possession to all of the property owned by them of record. However the prayer of the petition did not specifically ask for any declaration as to rights of possession. Defendants filed the counterclaim in two counts which has already been described.

Although at trial defendants contended that their adverse use of the encroaching portion of the driveway commenced earlier, they now concede on this appeal that the adverse use did not commence until December 1968. Accordingly, the adverse use could not ripen into either adverse title or a prescriptive easement until December 1978. Plaintiffs contend that the ten year period mentioned was interrupted and therefore did not fully run because of three events: (1) the driving of the stakes on May 6, 1978; (2) the delivery of the letter permitting defendants to use the driveway dated May 11, 1978; and (3) the filing of this suit on October 17, 1978.

Defendants argue that none of those three events were effective to interrupt the running of limitations. As to the driving of stakes, they contend that the entry by plaintiffs on the disputed land was ineffective because it was forcible in nature. As to the letter dated May 11th, defendants say that despite the purported permission, their possession continued to be hostile. With respect to the filing of the lawsuit, defendants argue that the petition did not meet the legal requirements for interrupting the adverse possession because: (a) the petition contained an inaccurate legal description, and the description was not amended until after the running of the ten year period; and (b) the petition did not pray for an adjudication as to the possessory right of the plaintiffs.

We need not discuss the effect of the May 11 letter nor of the petition filed October 17, for the reason that we determine that plaintiffs' reentry on the land on May 6, 1978, was a valid and effective interruption of defendants' adverse use.

The law generally recognizes that the true owner of land may interrupt an adverse use by reentry under circumstances showing his intention to assert dominion as against the adverse user, and such entry thereupon terminates the running of the period of adverse use. 3 Am.Jur.2d *Adverse Possession* Sec. 68 (1962); 2 C.J.S. *Adverse Possession* §§ 169, 171 (1972). This right of reentry, however, is limited by rule that the reentry must be peaceable and

not forcible in nature. 2 C.J.S. *Adverse Possession* § 175 (1972); *Ferguson v. Bartholomew,* 67 Mo. 212 (1877); *Cary v. Edmonds,* 71 Mo. 523 (1880).

In determining whether a reentry is forcible so as to violate the latter rule, the Missouri cases look to the forcible entry and detainer statutes. *Ferguson v. Bartholomew, supra.* Indeed, at oral argument, counsel for defendants agreed that whether an entry would be considered forcible for present purposes must be determined by the definition of forcible entry contained in the forcible entry and detainer statutes. "Forcible entry and detainer" is defined in Section 534.020, RSMo 1978, as follows:

"If any person shall enter upon or into any lands, tenements or other possessions, with force or strong hand, or with weapons, or by breaking open the doors or windows or other parts of a house, whether any person be in it or not, or by threatening to kill, maim or beat the party in possession, or by such words or actions as have a natural tendency to excite fear or apprehension of danger, or by putting out of doors or carrying away the goods of the party in possession, or by entering peaceably and then turning out by force, or frightening, by threats or other circumstances of terror, the party out of possession, and detain and hold the same—in every such case, the person so offending shall be deemed guilty of a forcible entry and detainer within the meaning of this chapter."

It has been held that there may be a forcible entry even though force may not actually be employed. Nevertheless it is clear that to so qualify, the circumstances created by the one making entry must be substantially equivalent to the use of force. A principal case on this subject is *Dennison v. Smith,* 26 Mo. 487 (1858). In that case, entry had been made on the land in question by five or six men on horseback. With respect to that entry, the court held as follows:

"There was certainly evidence to show an entry 'with strong hand'—five or six men on horseback, armed with guns and pistols, approaching the house during the temporary absence of the occupant, and their appearance and manner be sufficiently 'threatening' to induce some laborers on the place in the employment of plaintiff to leave suddenly, in the midst of their days' work, without asking any questions. True, no actual menaces were proved; none, it seems, were necessary. Their appearance and manner may have sufficiently indicated their purpose to render threats unnecessary. This matter was for the jury."

The acts here by plaintiffs at the time they entered the land and drove stakes into the disputed portion of the driveway did not come within the scope of what is described and intended by the Missouri forcible entry and detainer statute. Those acts were accomplished before any opposition was or could be made by the defendants. There was no violence or threat of violence, and it is interesting to point out that the driveway remained useable and actually was used by defendants and others during the time that the disputed encroachment was fenced off. All that plaintiffs did was to exercise their right of dominion over their own property in a peaceful manner. Their actions here in no way meet the definition of forcible entry contained in Section 534.020, nor did those acts approach the constructive violence involved in *Dennison v. Smith, supra.*

Defendants cite and rely on *Bugner v. Chicago Title & Trust Co.,* 280 Ill. 620, 117 N.E. 711 (1917), where the true owner entered the land in question and built a fence which was promptly torn down by the adverse user. The Illinois court held that this entry was unlawful and ineffective to interrupt the adverse use. However, *Bugner* is in essential disagreement with *McNeely v. Southwestern Settlement & Develop. Corp.,* 284 S.W.2d 167 (Tex.Civ.App.1955) and *In Re Twenty-Second Ave. Southwest,* 72 Wash. 99, 129 P. 884 (Wash.1913), and it is inconsistent with the teaching of the Missouri authorities cited above. To the extent that *Bugner* is contrary to our holding in this case, we decline to follow *Bugner.*

The judgment is affirmed.

All concur.