The METROPOLITAN ST. LOUIS SEWER DISTRICT, Plaintiff–Respondent,

v.

Mark HOLLORAN, et al., Defendants–Appellants.

Nos. 51699, 51705.

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 9, 1988.[1]

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 12, 1988.

---

1. An opinion in this case was originally issued on July 21, 1987. That opinion was subsequently withdrawn on October 27, 1987, when this court sustained respondent's motion to dismiss because no substitution of parties had been made within 90 days of the July 13, 1987, filing of a suggestion of death of Hazel Harris on May 18, 1987. The Supreme Court ordered the cause transferred and by opinion of June 14, 1988, 751 S.W.2d 749, reversed this court's order dismissing the appeal and ordered that the motions of Rennard Harris for substitution as a party be granted. By order we have done so. The original opinion of July 21, 1987, with some modification is now reissued.

John R. Essner, Legal Services of Eastern Mo., Inc., St. Louis, for Hazel Harris (deceased).

Canice Timothy Rice, Jr., Substituted Atty., St. Louis, for Rennard Harris.

Joseph A. Fenlon, Gregory G. Fenlon, Clayton, for plaintiff-respondent.

SMITH, Presiding Judge.

Rennard Harris as personal representative of the estate of Hazel Harris and as sole devisee under her will, appeals from an order of the trial court sustaining a motion for directed verdict on her adverse possession claim and decreeing Joseph and Susan Fenlon as owners in fee of property occupied by Harris. We reverse.

The case started as a condemnation action by Metropolitan Sewer District. By cross-claim Harris sought a decree of her fee interest in certain of the property as a result of adverse possession. Additional defendants Reed sought a similar decree as to an adjoining parcel. Both parcels are titled in the name of defendant Joseph Fenlon as a result of a collector's deed arising from a tax sale. The condemnation proceeding was separately tried and is not before us. The court entered a similar decree to the Harris decree against the Reeds. They have not appealed so that judgment in favor of the Fenlons is final.

In 1950, Mrs. Harris (hereinafter referred to for convenience as plaintiff) and her now deceased husband bought approximately two acres of land from Clara Zirwes. The land was part of a larger tract owned by Zirwes and at the time of sale Clara showed the Harrises the location on the ground of the land sold. The Harrises constructed a home on the property, replaced that home when a tree fell on it, filled in gullies, cleared brush, and generally improved the land for residential purposes. In fact the land conveyed by Zirwes' deed was four hundred feet up the road from the residence of the Harrises'. Plaintiff did not become aware of that fact until 1984. In 1961 the Harrises deeded approximately one acre of their land to their son and by subsequent conveyances that acre was acquired by the Reeds in 1982. The description of the land conveyed to the son was a portion of the parcel actually conveyed in the Zirwes deed and that description was carried forward to the Reed's deed. A residence was built on the one acre adjoining the Harris residence and access to that acre is by a driveway through the Harris residence lot. Use of that access is with permission of plaintiff.

In 1970 a larger tract including the Harris and the present Reed residence tracts was sold for delinquent taxes. Fenlon paid $895 for the entire tract purchased. On August 26, 1970, a certificate of purchase was issued by the collector to the Fenlons. On May 3, 1974, a collector's deed was issued to Fenlon which was recorded on May 6, 1974. On December 6, 1984, the Fenlons filed their answer in the condemnation suit and sought a declaration that plaintiff and the Reeds had no interest in the property. Plaintiff testified that she had received a letter in 1984 from Fenlon "about his claim." At no other time prior to the filing of the Fenlons' answer had anyone questioned her right to the property. A surveyor hired by plaintiff produced a survey showing the actual property purchased by the Harrises in 1950. The survey also showed the area occupied by plaintiff and the Reeds. He determined these areas by personal observation of the land used for residential purposes and by comparison with the distances set forth in the Zirwes deed. Fenlons offered no evidence, relying instead on their motion for directed verdict.

A party who claims title to real property by adverse possession must prove that the possession has been actual, open and notorious, exclusive, hostile and continuous for a period of at least ten years. *Schaumberg v. Heafey*, 650 S.W.2d 697 (Mo.App. 1983) [1]. There is no question here that plaintiff's possession was actual and open and notorious. Fenlons challenge that it was for ten years and that it was hostile and exclusive.

The parties have joined issue on when the period of adverse possession commences. Both agree that plaintiff's ownership by adverse possession prior to 1970 was terminated by the tax sale in that year. Plaintiff contends the period commences one year after the tax sale when Fenlons acquired the right to possession. Sec. 140.-310 RSMo 1986. The right to possession would entitle the purchaser to an action in ejectment although not an action to quiet title. Sec. 140.330 RSMo 1986. Ejectment challenges the right of possession and is the proper remedy against an adverse possessor. Sec. 524.010 RSMo 1986. Fenlons contend the clock started when the collector's deed was recorded. This position is supported by *Taft v. McCullock*, 135 Mo. 588, 37 S.W. 499 (1896). In that case the statute involved did not give the purchaser the right of possession prior to the expiration of the period of redemption. The absence of such a provision was held critical in *Parsons v. Viets*, 96 Mo. 408, 9 S.W. 908 (1888), where the court concluded that the *purchaser* held adversely when he took possession prior to the issuance of the deed. The court distinguished the act of 1872 from the earlier act of 1857 which, as with the present law, authorizes possession by the purchaser prior to issuance of the deed. It indicated that had the 1857 statute applied the opposite result would follow. *Parsons v. Viets* would warrant the conclusion that under the present law adverse possession against the purchaser at a tax sale commences one year after the sale. It is at least questionable that *Taft* is controlling under the present law.

 We need not resolve that issue however. At the latest the period of adverse possession commenced May 6, 1974. Fenlons' first legal challenge to that possession was on December 6, 1984, more than ten years later. Fenlons' contention that they paid taxes on the property does not defeat plaintiff's adverse possession. Payment of taxes does not create title and non-payment does not defeat title. *Ort-*

*meyer v. Bruemmer,* 680 S.W.2d 384 (Mo. App.1984) [20]. The letter from Fenlon is similarly ineffective to interrupt that possession. The contents are not of record nor is the date. The true owner of land may interrupt an adverse possession by reentry under circumstances showing an intention to assert dominion against the adverse user. *Pierce v. Austin,* 651 S.W. 2d 161 (Mo.App.1983) [2, 3]. The burden to establish a reentry is upon the person seeking to defeat the claim of adverse possession. There is no evidence here to support a finding of reentry.[2] The adverse possession was for longer than the required ten years.

 Fenlons next challenge the element of hostility, claiming that Harris occupied the land as a result of a mistake. Hostility necessary to establish adverse possession does not require ill will or malevolence. It requires no more than an assertion of ownership adverse to that of the true owner and all others; an occupation with an intent to own and not merely a possession conditioned on the superior claim of another. That the possessor mistakenly believes he owns the land does not defeat the element of hostility. The exclusive possession and use of land is presumed to be adverse absent positive proof to the contrary. *Schaumburg v. Heafey, supra,* [2–5]; *Porter v. Posey,* 592 S.W.2d 844 (Mo.App.1979) [9–11]. The undisputed evidence establishes hostility.

 The challenge to the exclusivity element is similarly without merit. As to the one acre Harris residential plot there is no evidence of non-exclusivity. The uses which the Reeds made of that property such as access to their home and storage of some personal items was with the permission of plaintiff. Plaintiff occupied the land for her own use and not for that of another. That is sufficient. *Porter v. Posey, supra,* [14–16]; *Ortmeyer v. Bruemmer, supra,* [14–16].

 Finally, the Fenlons challenge the boundary lines established by Reed's sur-

---

**2.** The trial court found that Fenlon had visited the property numerous times. The only support for this finding was a question asked plaintiff's witness to which a negative response was re-

ceived. That does not establish such visits, nor that such visits were known to plaintiff or constituted a reentry.

veyor. The evidence established plaintiff's use of the entire one acre tract. The surveyor based his survey on what he observed to be the area of possession. Such surveys are acceptable as proof of the boundaries in adverse possession cases. *Ortemeyer v. Bruemmer, supra,* [19]. Upon remand the court can determine the legal description of the Harris tract.

Fenlons' motion for directed verdict specifically stated it was made at the close of all of the evidence. The evidence established all the elements of plaintiff's claim and there was no contrary evidence. The trial court's ruling was based on misapplication of the law not on resolution of factual disputes. The judgment should have been for the plaintiff.

Order granting motion for directed verdict reversed. The cause is remanded for determination of the ownership of Hazel Harris' fee simple absolute interest in the land. Description of the approximately one acre residential lot to be determined by the court.

DOWD and REINHARD, JJ., concur.