**Richard ORTMANN, et al., Respondent,**

v.

**DACE HOMES, INC., Appellant.**

**No. ED 79755.**

Missouri Court of Appeals,
Eastern District,
Division Five.

July 16, 2002.

Robert E. Jones, Jones, Korum, Waltrip, Jones & Doskocil, Clayton, MO, for appellant.

Donald E. Heck, Clayton, MO, for respondent.

JAMES R. DOWD, P.J.

Richard and Denise Ortmann filed a quiet title action to determine ownership of a disputed tract of land situated between their surveyed property line and a fence they believed to be their property line. The court found that the Ortmanns acquired the land by adverse possession. Dace appeals. We affirm.

We view the evidence in the light most favorable to the verdict. *Homan v. Hutchison,* 817 S.W.2d 944, 947 (Mo.App. W.D.1991).

Richard and Denise Ortmann purchased their home and property on March 22, 1987. The family moved in during the

spring of 1987 and received the General Warranty Deed on May 8, 1987. The Ortmanns believed that the deed described the property to the fence located on the eastern side of their lot because they had inspected the property prior to and on the purchase date and saw no surveyors' pins, stakes, flags, signs or monuments to indicate otherwise.

The family occupied the area between the surveyed property line and the fence, a parcel of land containing approximately .613 acres (the adverse possession tract), from their purchase on March 22, 1987. Their use included the following: planting seeds, gardens and flowers; mowing the grass; clearing portions of the ground; erecting a building, dog house and dog run; constructing a road along the fence; installing a sewage lagoon to service the home; storing equipment; and using the land as a play area for their children.

Dace Homes purchased property adjacent to the eastern boundary of the Ortmann land on April 24, 1997 to construct a residential subdivision. On April 30, 1997, George Timmerman of Gardner Surveying performed an out-boundary survey of the Dace property. He located various monuments and survey pins outside and to the north of the record boundary between the two properties, but was unable to find anything marking the common record boundary between the two properties. Because there was nothing visible marking the boundary, he had to use pins and monuments located elsewhere on the Dace property to mathematically locate a thumb-size surveyor's pin in the ground at the edge of the Ortmann driveway. Timmerman marked this pin with a small ribbon, but did not drive stakes into the ground or make any other indications marking the common property line.

Ron Dace accompanied the surveyor on April 30, 1997. Mr. Dace saw the Ort-

mann home and noticed their occupancy and use of the adverse possession tract. Mr. Dace did not tell the Ortmanns that they were trespassing. He did not demand that they vacate the adverse possession tract. He did not instruct the surveyor to mark the common boundary. And he did not drive stakes or post signs to indicate his assertion of ownership of the tract. He admitted that he neither spoke to nor seriously attempted to get in touch with the Ortmanns regarding their encroachment. Other than being on the property during the survey, he did not re-enter the land prior to the ten-year anniversary of the Ortmann's General Warranty Deed.

The first indication that Dace was claiming ownership of the adverse possession tract was in the spring of 1998. Surveyors' stakes were then placed in the Ortmann yard and Dace began grading the adjoining property. When Mr. Ortmann found these stakes he went to the Dace office to notify Mr. Dace that his company was trespassing. At this time, Dace still did not tell the Ortmanns to discontinue use of the adverse possession tract. Other than the stakes in the spring of 1998, Dace never displayed any outward signs of its claim of ownership of the adverse possession tract.

The Ortmanns brought an action to quiet title by adverse possession on June 30, 1999. The trial court found that the Ortmanns' use satisfied the elements of adverse possession and entered judgment for them and against Dace Homes. Dace now appeals.

When reviewing a court-tried case, we view all evidence and inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Strubberg v. Roethemeyer,* 941 S.W.2d 557, 561 (Mo.App. E.D.1997). We defer to the trial court's determinations as to the credibility of witnesses. *Pinnell v.*

*Jacobs,* 873 S.W.2d 925, 927 (Mo.App. E.D. 1994). The trial court may believe all, part, or none of any witness's testimony. *In Re Fabius River Drainage Dist.,* 35 S.W.3d 473, 473 (Mo.App. E.D.2000). This Court must affirm a trial court's judgment unless it is not supported by evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ To prevail on a claim of adverse possession, the Ortmanns must prove the possession was (1) hostile, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for a period of ten years. *Whiteside v. Rottger,* 913 S.W.2d 114, 120 (Mo.App. E.D.1995). To halt an adverse possession, the record title owner of the property must re-enter the property under circumstances showing his intention to assert dominion against the adverse user. *Pierce v. Austin,* 651 S.W.2d 161, 162 (Mo. App. W.D.1983). The title owner bears the burden to establish the re-entry. *Metropolitan St. Louis Sewer District v. Holloran,* 756 S.W.2d 604, 606 (Mo.App. E.D. 1988).

■ Dace asserts essentially three points of error on appeal. In its first point of error Dace asserts that when the Gardner Corporation conducted its out-boundary survey and placed a small flag on a pin at the edge of the Ortmann driveway that it effectively re-entered the property on April 30, 1997, interrupting the 10–year adverse possession period. In support of this argument they cite *Pierce v. Austin,* 651 S.W.2d 161, 162 (Mo.App. W.D.1983), in which the title owner entered the land in question and clearly marked the boundaries of the area being encroached upon. The title owner drove stakes into an existing driveway and connected those stakes with rope to fence off the area, making it impossible to use. *Id.* They then posted a

sign at the area notifying the defendants that the fenced-off area could no longer be used. *Id.* The title owners later sent a letter and filed suit, but the Court found it unnecessary to reach these two events because re-entry was effected by driving the stakes and fencing off the area clearly prohibiting use by non-owners. *Id.* The court held this was an effective interruption of defendant's adverse use. *Id.*

The case before us is different from *Pierce* because there the record title owners themselves achieved a valid and effective re-entry, disrupting the use of the land and notifying the adverse user that the record title owners were re-entering the property under circumstances showing their intention to assert dominion. In this case, the surveying company merely placed a small flag on the "old, thumb-sized iron pin." This was not performed by the record title owner and, we conclude, did not manifest an intention to assert dominion. The trial court found that act to be insufficient re-entry. We agree.

■ Dace points to the bigger project happening around the property as evidence of the company's intent to assert ownership, but those acts did not occur on the adverse possession tract and are, therefore, irrelevant. Dace did not halt the adverse possession. Accordingly their first point is denied.

■ In its second point, Dace cites *Flowers v. Roberts,* 979 S.W.2d 465 (Mo. App. E.D.1998) for the proposition that the trial court erred in not holding the Ortmanns to a higher level of proof because part of the land to the fence was wooded. In *Flowers,* the land was "wild, undeveloped and covered in woods and hills" and the court took this into account when evaluating the "open and notorious" prong, but disregarded it in the evaluation of the "actual" prong of the adverse possession

claim. *Id.* at 470–1. The land at issue in this case is neither wild, undeveloped nor covered in woods and hills. The trial court considered evidence about the condition of the land and about the Ortmanns' use of it and determined that as a matter of fact that their use was sufficient to establish adverse possession for the entire tract of land. We will not upset this finding unless the trial court has abused its discretion. *Murphy*, 536 S.W.2d at 32. Point denied.

■ Dace's final point is that the Ortmanns have essentially raised a "boundary by acquiescence" claim and that the trial court erred by considering their claim because the Ortmanns failed to plead that both parties agreed on a common boundary. This point is without merit. The Ortmanns did not argue "boundary by acquiescence" nor were they required to. This case was pleaded and tried under the theory of adverse possession. Even were there some merit to the argument, Dace never raised this issue at trial and so we will not review it. *Thomas v. Lloyd*, 17 S.W.3d 177, 186 (Mo.App. S.D.2000). Accordingly, the point is denied.

The judgment of the trial court is in all respects affirmed.

CLIFFORD H. AHRENS, J., concurs.

SHERRI B. SULLIVAN, J., concurs.