In the ESTATE OF Robert E. KLING, Deceased.

John William KLING and Janet A. Kling, Petitioners-Appellants,

v.

Nancy Heman KLING and Everett W. Kling, Defendants-Respondents.

John William KLING, et al., Petitioners-Respondents,

v.

Nancy Heman KLING, et ux., Defendants-Appellants.

Nos. 51916, 51917.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 11, 1987.

Motion for Rehearing and/or Transfer Denied Sept. 9, 1987.

Jack F. Allen, Clayton, for petitioners-appellants.

Edward E. Murphy, Clayton, for defendants-respondents.

GARY M. GAERTNER, Presiding Judge.

John and Janet Kling, the surviving children of Robert Kling, decedent, brought an action against decedent's brother Everett and his wife Nancy. Acting as personal representatives of the estate, the children (appellants) sought discovery of assets and made a claim to certain property held by Everett and his wife.

Decedent and Everett (respondent, cross-appellant) owned several pieces of property together. The properties included Water Oaks, a recreational property in Crawford County, Cheshire Lane, a rental property in Webster Groves, and Horan Drive, a rental property in Fenton. Decedent and Everett also maintained several joint bank accounts. They maintained an account at Centerre Bank of Chesterfield into which they made deposits and paid the expenses of the rental properties. The Centerre account had a balance of $7,148 at decedent's death. A bank account at Commerce Bank of Webster Groves was set up and maintained for the upkeep of Water Oaks. Decedent and Everett had agreed to each contribute $20 per month to the account. Repairs and expenses of the property would then be paid out of the account. Decedent never contributed to the account and Everett increased his contribution to $40 per month. Everett alleges that decedent's failure to contribute to the upkeep of Water Oaks created a "moral obligation" leading to the confusion surrounding the title to the Fenton property.

When the brothers purchased the Fenton property each contributed part of the purchase price, with the property being titled in Everett's wife's maiden name. The evidence as to why the brothers had the property titled in Everett's wife's name is conflicting. Everett alleges that it was a security arrangement resulting from decedent's "moral obligation" from Water Oaks. Appellants allege that decedent sought to hide his ownership of the Fenton property from his employer, the City of Fenton.

Everett and his wife claimed 100% ownership of the Fenton property. Appellants sought the imposition of a resulting trust, splitting the property 50–50. The trial court imposed a resulting trust determining Everett's interest to 71% and decedent's interest to be 29%. The court also found the Centerre Bank account to be held in joint tenancy with right of survivorship

and awarded the balance to Everett. Both Everett and appellants challenge the trial court's judgment.

On cross-appeal, Everett attacks the trial court's ruling which precluded him from testifying under the Dead Man's Statute.[1] Everett then made an offer of proof detailing the conversations between decedent and Everett regarding the Fenton property. Everett argues that the evidence shows that the parties intended a security arrangement, not an implied trust. The trial judge did not consider the offer of proof in making his findings of fact and conclusions of law.

> "[I]n actions where one of the original parties to the contract or cause of action in issue and on trial is dead, ... the other party to such contract or cause of action shall not be admitted to testify ... in his own favor...."

RSMo § 491.010 (Cum.Sup.1984). Everett argues that cross-respondents waived the protection of the Dead Man's Statute by bringing the action and introducing evidence of the transaction in dispute, citing *Buchweiser v. Laberer*, 695 S.W.2d 125 (Mo. banc 1985). *Buchweiser* was decided August 7, 1985, well after the trial in the instant case.[2] Since application of the Dead Man's Statute is an evidentiary matter procedural in nature, the *Buchweiser* case applied prospectively only. *In re Weissinger*, 720 S.W.2d 430, 431 n. 1 (Mo. App., E.D.1986). The trial court correctly applied the statute in effect at the time of trial. Further, the evidence contained in Everett's offer of proof was mostly cumulative and would not have overwhelmed the clear and convincing evidence of the resulting trust. Cross-appellants' first point is denied.

Both parties attack the trial court's application of a resulting trust. Appellants claim that the trust should have been divided 50–50. Everett argues that a resulting trust never arose, rather the evidence showed the parties intended a security arrangement.

The law implies a resulting trust from the conduct of the parties and the circumstances existing at the time of the transaction from which the trust arose. *Dallas v. Dallas*, 670 S.W.2d 535, 539 (Mo. App., E.D.1984). The burden of establishing the elements of a resulting trust lies with the party seeking to establish the resulting trust. *Robinson v. Owens*, 647 S.W.2d 206, 207 (Mo.App., E.D.1983). Where one pays the purchase price for land with legal title taken in another, a presumption arises that the latter holds the property under a resulting trust for the payor. *Dallas*, 670 S.W.2d at 539. If the payor only pays a part of the purchase price, he acquires a pro tanto interest in the real estate. *Duncan v. Rayfield*, 698 S.W.2d 876, 880 (Mo.App., S.D.1985). This theory assumes that one who provides purchase money intends to receive the benefit of the purchase. Absent evidence to the contrary, it is presumed that the payor did not intend to make a gift. *Jones v. Anderson*, 618 S.W.2d 252, 255 (Mo.App., S.D.1981).

Of the $19,005.00 paid at and before the closing, the evidence showed that decedent contributed $5,544 and Everett contributed $5,624. The remaining $7,837 was attributed to Everett because appellants, the proponents of the trust, failed to meet their burden of proving otherwise. *See Robinson v. Owens*, 647 S.W.2d 206, 207 (Mo.App., E.D.1983). The trial court's calculation resulted in a 29% share for decedent and a 71% share for Everett. The trial court based its determination on clear and convincing evidence and we will not disturb its ruling absent a strong showing of evidence to the contrary. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We find no such evidence. Appellants' first point and cross-appellants' second point are denied.

---

**1.** In 1985 the legislature abrogated the Dead Man's Statute by substantially rewriting § 491.010. *See* RSMo § 491.010 (1986).

**2.** *Buchweiser* had been previously decided by the Missouri Court of Appeals, Eastern District in December, 1984, but was transferred to the Missouri Supreme Court and pending at the time of trial.

In their second point, appellants allege that the trial court erred in refusing to admit certain evidence pertaining to the Cheshire property. The trial judge excluded the evidence based on relevancy. The determination of whether offered evidence is relevant lies within the sound discretion of the trial court. The trial court's ruling will be upheld absent an abuse of discretion. *Moreland v. State Farm Fire & Casualty,* 662 S.W.2d 556, 565 (Mo.App., S.D.1983); *Weatherly v. Miskle,* 655 S.W.2d 842, 844 (Mo.App., E.D.1983). We find no abuse of discretion. Point denied.

Finally, appellants allege that the trial court erred in awarding the balance of Everett and decedent's joint checking account to Everett. Appellants argue that the account contained trust proceeds which continued to be subject to the trust. We do not find appellant's argument persuasive and will follow the well-settled rule in Missouri that absent fraud or undue influence, a joint bank account is held in joint tenancy with right of survivorship. RSMo § 362.-470 (1986). *See In re LaGarce,* 487 S.W.2d 493, 499 (Mo. banc 1972). This point is denied.

Finding appellants' and cross-appellants' contentions on appeal without merit, we affirm the judgment of the trial court.

STEPHAN and SIMON, JJ., concur.