**REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, A Missouri Not–For–Profit Corporation and The Reorganized Church of Jesus Christ of Latter Day Saints, an International Unincorporated Association, Plaintiffs/Respondents,**

v.

**Rennald Perry THOMAS, Defendant/Appellant.**

**No. WD 40292.**

Missouri Court of Appeals, Western District.

Oct. 18, 1988.

Kevin E. Glynn, Kansas City, for defendant-appellant.

Stephen J. Owens, Julie M. Cheslik, Kansas City, for plaintiffs-respondents.

Before CLARK, P.J., and
LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

In this case the plaintiffs at trial and respondents on appeal are the Reorganized Church of Jesus Christ of Latter Day Saints, an International Unincorporated Association (hereinafter RLDS World Church) and the Reorganized Church of Jesus Christ of Latter Day Saints, a Missouri not-for-profit corporation (hereinafter RLDS Mo. Corp.) The defendant at trial and appellant herein is Rennald Perry Thomas. Thomas was the Presiding Elder or pastor of a congregation of the RLDS World Church located in Buckner, Missouri.

RLDS World Church and RLDS Mo. Corp. brought suit against Thomas seeking a permanent injunction to prevent Thomas and his followers in the Buckner congregation from entering and worshipping in the Buckner church property. Thomas filed a counterclaim seeking a declaration from the court that the Buckner congregation owned the church property or in the alternative damages in the amount of the value of the property. After hearing, the trial court entered an injunction in favor of RLDS World Church and RLDS Mo. Corp. and against Thomas, also denying Thomas' counterclaim on both points. Thomas appeals.

Some general information about the RLDS World Church is necessary to understand the issues presented herein. The RLDS World Church is a hierarchical religious society wherein power and authority flow from the top down to the subordinate local congregation. The congregation is the basic, grass roots level of the RLDS World Church. In ascending order of authority within the RLDS World Church are the congregation; the "stake"; the "region"; the "field"; and at the top, the "First Presidency", which is made up of the top officials who are responsible for the direction and control of the entire RLDS World Church.

The basis for the church structure is divine revelation to the Church President which is recorded in one of the standard books of the RLDS World Church, the *Doctrine and Covenants*. The other standard books used to guide the church spiritually are the *Book of Mormon* and the *Bible*. The *Rules and Resolutions* sets out the governing rules or procedures of the RLDS World Church, which are approved by the Church's highest legislative body, the World Conference.

The congregation leader is called the "Presiding Elder." Each stake is usually comprised of several congregations and a stake is under the guidance of a Stake President and a Stake Bishop. The Buckner, Missouri, congregation of the RLDS World Church has been one of 14 congregations comprising the Blue Valley Stake since the formation of that stake in 1963 by resolution of the World Church. Before that, the Buckner congregation was part of

the Central Missouri Stake. The President of the Blue Valley Stake is William Barnhard. The Stake Bishop for the stake in which the Buckner congregation was assigned from 1949 to 1975 was Willard Becker.

At the field level, a group of twelve people called the "Council of Twelve Apostles", each of whom is assigned to a geographic region, works with regional administrators and Stake Presidents to direct their activities. The apostle in charge of the Central Field, of which the Blue Valley Stake is a member, is William T. Higdon.

At the highest level of the RLDS World Church are the President, Wallace Smith, and the Presiding Bishop, Francis E. Hansen. The Presiding Bishop of the RLDS World Church and two counselors comprise the "Presiding Bishopric". The members of the Presiding Bishopric act as the chief financial officers of the RLDS World Church and are the administrators of the temporal affairs of the RLDS World Church. The RLDS World Church holds title to property in one of two ways. Property can be held in the name of a presiding bishop as trustee in trust for the RLDS World Church for the use and benefit of the RLDS World Church or, in those states where it is allowed, title can be held in the name of one of the RLDS World Church not-for-profit corporations that are formed by the Presiding Bishopric and in which the Presiding Bishopric serve as trustees.

In 1952 the RLDS World Church adopted a directive in the *Rules and Resolutions* instructing the Presiding Bishop to form not-for-profit corporations where possible, and specifically in the State of Missouri, to hold land for the RLDS World Church. This directive was accomplished in Missouri with the formation by the RLDS World Church Presiding Bishopric of a Missouri not-for-profit corporation entitled the "Reorganized Church of Jesus Christ of Latter Day Saints". RLDS Mo. Corp. is the land-owning affiliate of the World Church in Missouri and a respondent herein.

The Buckner, Missouri RLDS congregation was founded in 1945. The property in relation to which the dispute in the case at hand arises was purchased in 1952. Willard Becker, who was then the Stake Bishop of the stake in which the Buckner church property is located, and Myrle Smith, a member of the Buckner congregation, negotiated the purchase of the property with Mildred F. Wallace who was the owner of the property.

The deed from Wallace conveyed the land on which the Buckner church is now located to "G. Leslie De Lapp, Presiding Bishop as Trustee in Trust for the Reorganized Church of Jesus Christ of Latter Day Saints, and his successor in office for the use and benefit of said church." In the following year, 1953, Mildred F. Wallace conveyed a contiguous strip of land in the same manner to "G. Leslie De Lapp, Presiding Bishop as Trustee in Trust for the Reorganized Church of Jesus Christ of Latter Day Saints, and his successors in office for the use and benefit of said church." These two parcels of land comprise the church property at issue in this case.

In 1963, title to the RLDS Church property at Buckner was transferred by the Presiding Bishop to the Reorganized Church of Jesus Christ of Latter Day Saints, a Missouri not-for-profit corporation.

Differences of opinion arose between the RLDS World Church and the Presiding Elder of the Buckner congregation, Rennald Perry Thomas, (hereinafter Thomas), and his followers within the congregation.

In 1984, the RLDS World Church adopted Section 156 of the *Doctrine and Covenants*, which permits the ordination of women into the priesthood. Thomas and his followers refused to support the ordination of women. After efforts to work out their differences had failed, the RLDS World Church decided that Thomas should no longer be allowed to act as Presiding Elder of the Buckner congregation. This decision was made after the relationship of the RLDS World Church with Thomas and his followers had deteriorated as a result of their continued disputes and the unwillingness of Thomas and his followers to accept the directives of the RLDS World Church leadership.

On September 21, 1987, the President of the Blue Valley Stake, William Barnhard, asked Thomas to resign as Presiding Elder of the Buckner congregation. Thomas refused and he was "silenced" for insubordination to higher church authority. Barnhard then appointed Sterling Barlow to take Thomas' place as Presiding Elder.

On Sunday, September 27, 1987, Barnhard and Barlow went to the Buckner church to install Barlow as Presiding Elder. The congregation voted to refuse to accept Barlow and to retain Thomas as their Presiding Elder.

On September 28, 1987, Barnhard reported the occurrences of the previous day to William T. Higdon, the Apostle for the Central Field, which includes the Blue Valley Stake and the Buckner congregation. Higdon directed Barnhard to find that there was a state of disorder in the Buckner congregation and to temporarily suspend their activities. On September 30, 1987, Barnhard and Higdon had the locks on the Buckner church property changed, barricades erected and notices posted to keep people off the property. On the same day as these measures were taken, Thomas and his followers had keys made to the new locks, removed the barricades, held services in the church and conducted interviews with radio and television media representatives.

On October 1, 1987, the respondents herein filed their petition for preliminary and permanent injunctive relief against Thomas and those acting in concert with him. After a hearing at which all parties appeared on October 2, 1987, a temporary restraining order was entered enjoining Thomas and those acting in concert with him from among other things, entering or remaining on the church property in Buckner and from disrupting or in any way interfering with worship services or other activities held on the premises. A consolidated preliminary injunction hearing and trial on the merits was conducted on January 7 and 8, 1988.

On January 11, 1988, the Honorable Jon R. Gray entered his Findings of Fact, Conclusions of Law and Judgment entering a Permanent Injunction against Thomas and certain others from which Thomas appeals.

## I. CHURCH PROPERTY

On appeal, Thomas argues that the trial court erred in finding that the RLDS World Church is the legal owner of the Buckner church property and that the RLDS World Church holds the property in trust for the entire membership of the World Church. Thomas argues that the trial court erred in finding that the original 1952 and 1953 deeds were valid trust instruments which simultaneously created trusts in favor of the RLDS World Church and conveyed land to the trustees. Thomas contends that the RLDS World Church holds the property in question in trust for the Buckner congregation alone and not for the RLDS World Church.

Missouri courts have adopted the neutral principles approach as the exclusive method for the resolution of church property disputes. *Presbytery of Elijah Parish Lovejoy v. Jaeggi*, 682 S.W.2d 465, 467 (Mo. 1984), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2361, 86 L.Ed.2d 262 (1985). Under this approach the court must refrain from resolving the dispute on the basis of religious doctrine and must rely instead on general principles of state property and trust law to resolve a church property dispute. *Id.* at 473. The court may consider who holds record title, the language of the deed(s), any relevant state statutes, and both local and general church documents that provide guidance or instruction on the ownership of church property. The court must, however, in scrutinizing religious documents do so in secular terms, rather than relying on religious precepts or concepts. *Jones v. Wolf*, 443 U.S. 595, 602–604, 99 S.Ct. 3020, 3024–3026, 61 L.Ed.2d 775 (1979); *Presbytery of Elijah Parish Lovejoy v. Jaeggi*, supra at 473–474.

A deed which simultaneously creates a trust and conveys land to a trustee is a valid trust instrument. Restatement (Second) of Trusts § 17(b) (1959); *Penrod v. Henry*, 706 S.W.2d 537, 540–541 (Mo.App. 1986); *Sanford v. Van Pelt*, 314 Mo. 175, 282 S.W. 1022, 1028 (1926). In resolving

latent ambiguities in deeds, the trial court must determine the intent of the parties, based on the deed itself, and the surrounding circumstances and conditions. *Penrod v. Henry, supra* at 540.

As stated previously, the original 1952 deed conveys the Buckner property at issue to "G. Leslie De Lapp, Presiding Bishop as trustee in trust for the Reorganized Church of Jesus Christ of Latter Day Saints and his successors in office for the use and benefit of said church." The 1953 deed transferred a contiguous piece of property in the same manner. Subsequently, in 1963, pursuant to RLDS World Church directive, contained in the *Rules and Resolutions,* the Presiding Bishop conveyed the entire property to the RLDS Mo. Corp. This corporation, whose trustees are the Presiding Bishopric of the World Church, was created for the purpose of "taking title to property . . . in order to provide the religious, educational, charitable, and eleemosynary purposes of the religious denomination known as the Reorganized Church of Jesus Christ of Latter Day Saints . . ." The Articles of Incorporation specifically provide that in the event of dissolution, all of the assets shall be delivered to the "Presiding Bishop, as Trustee in Trust for the international unincorporated association known as The Reorganized Church of Jesus Christ of Latter Day Saints, with world headquarters in Independence, Missouri, for the use and benefit of said church." Thomas argues that the conveyance in 1963 to the RLDS Mo. Corp. was invalid because the original 1952 and 1953 deeds establish that the Buckner congregation owns the property and that the property is held in trust for the Buckner congregation.

The beneficiary of the express trust as set out in the original deeds is "The Reorganized Church of Jesus Christ of Latter Day Saints." This title is the precise name of the respondent RLDS World Church as set out in relevant church documents. Resolution 1144 of the *Rules and Resolutions* provides that the "English language name of the church whenever it is used officially and legally be 'The Reorganized Church of Jesus Christ of Latter Day Saints'". Resolution 866 of the *Rules and Resolutions* provides that when the Presiding Bishop takes title as trustee, he takes title as trustee of the unincorporated association, the RLDS World Church. Resolution 903 of the *Rules and Resolutions* provides that the building of houses of worship and purchasing of land shall be considered a part of the work of the General Church and under the supervision of the General Church. Furthermore, the Presiding Bishopric's *Guidelines for Church Building,* reiterates that the RLDS World Church must approve all local building projects and sets out the precise language to be used in titling property, which is the exact language contained in the deeds at issue in this case.

In the case at bar the trial court considered extrinsic evidence which included the church documents referenced above and the testimony of Myrle Smith, a member of the Buckner congregation who was involved with the negotiations and purchase of tract purchased in 1952, as well as the testimony of Willard Becker, who was Stake Bishop and was likewise involved with the negotiation and purchase of the same tract. Becker testified that there was never any doubt or dispute that the land was acquired in the name of the Presiding Bishop, as trustee in trust for the RLDS World Church, to hold the property for the use and benefit of the RLDS World Church. Myrle Smith, on the other hand, testified that he understood that the property was to be owned by the Buckner congregation.

It is the province of the trial court to judge the credibility of witnesses and to resolve conflicts in testimony. *Dallas v. Dallas,* 670 S.W.2d 535, 538–539 (Mo.App. 1984); Mo.R.Civ.P. 73.01(c)(2). The decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.1976).

Given the language of the deeds in question, the relevant church documents, the

surrounding circumstances and conditions, and the resolution of conflicting testimony by the trial court there is no error in the trial court's finding that the RLDS World Church is the legal owner of the Buckner church property and that the property is held in trust for the entire membership of the RLDS World Church.

## II. INJUNCTIVE RELIEF IN GENERAL

On another point Thomas argues that the trial court erred in granting injunctive relief to respondents because the respondents had an adequate remedy at law and because there was no irreparable harm shown. This argument is denied based upon established Missouri law.

The general rule is that an injunction may issue to prevent the doing of any legal wrong whatever, whenever in the opinion of the court an adequate remedy cannot be afforded by an action for damages, but injunctive relief is unavailable unless irreparable harm is otherwise likely to result and plaintiff has no adequate remedy at law. *Smith v. Western Electric Company*, 643 S.W.2d 10, 13 (Mo.App.1982). However, irreparable harm need not be shown for injunctive relief where a trespass would require a multiplicity of suits to redress. In such a situation damages are not an adequate remedy and a party has a right to seek an injunction to prevent future trespasses. *Kugler v. Ryan*, 682 S.W. 2d 47, 50 (Mo.App.1984).

Thomas argues that the respondents were required to bring a legal action to decide the issues of title, ownership and trust beneficiary under Missouri law. However, Missouri courts have recognized that injunctive relief is a proper remedy to resolve church property disputes. *Hewitt v. Hager*, 639 S.W.2d 262 (Mo.App.1982); *Williams v. Wilder*, 397 S.W.2d 696 (Mo. App.1965); *Schwartz v. Jacobs*, 352 S.W.2d 389 (Mo.App.1961); *Montgomery v. Snyder*, 320 S.W.2d 283 (Mo.App.1958); *Fulbright v. Higginbotham*, 133 Mo. 668, 34 S.W. 875 (1896); Furthermore, the available remedy at law must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. *Hughes v. Neely*, 332 S.W.2d 1 (Mo.1960). Such was not the case in the matter at bar.

## III. INJUNCTIVE RELIEF–FAILURE TO FOLLOW CHURCH PROCEDURE

On this point Thomas argues that the respondents were not entitled to injunctive relief in that they had not exhausted their remedies and that required procedures within the church had not 'been followed.

Under the First Amendment religious controversies are not generally the proper subject of civil court inquiry and a civil court must accept the ecclesiastical decisions of church tribunals as it finds them. *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713, 96 S.Ct. 2372, 2382, 49 L.Ed.2d 151 (1976). Although civil courts have no ecclesiastical jurisdiction and ordinarily cannot question acts of church discipline or the removal of a pastor or a member if a controversy involves protection of civil or property rights, even though arising out of a religious dispute, the civil courts will exercise their jurisdiction to protect such rights. *Stamps v. Kirkendoll*, 689 S.W.2d 111, 113 (Mo.App. 1985).

The underlying dispute in the case at bar as addressed in the first argument reviewed in this decision was who owned and had the right to the use and possession of the Buckner church property. As addressed previously, the "neutral principles approach" is the exclusive method for the resolution of church property disputes and in applying the "neutral principles approach" for resolution of church property disputes, the court must refrain from resolving the dispute on the basis of religious doctrine and practice and must rely exclusively on objective, well-established concepts of trust and property law. *Presbytery of Elijah Parish Lovejoy v. Jaeggi, supra*.

The questions of whether or not the respondents had exhausted their remedies within the church and whether or not church procedures were followed are eccle-

siastical in nature and require interpretation of authority within the church as well as interpretation of church practice and policy. Under the neutral principles approach such matters were irrelevant toward resolving the underlying property dispute.

Appellant's argument that injunctive relief was not appropriate because church remedies had not been exhausted and the church procedures had not been followed is denied.

## IV. CONSTRUCTIVE TRUST—UNJUST ENRICHMENT

■ Thomas argues in another point on appeal that the trial court erred by not imposing a constructive trust in favor of the Buckner congregation so that the RLDS World Church would not be unjustly enriched.

Under Missouri law, a constructive trust is a device employed by a court of equity to provide a remedy in cases of actual or constructive fraud or unjust enrichment. *United States Fidelity and Guaranty Company v. Hiles*, 670 S.W.2d 134, 137 (Mo.App.1984). The burden of proof is upon the party seeking to establish a constructive trust in his favor. *Aronson v. Spitcaufsky*, 260 S.W.2d 548, 549 (Mo. 1953). The grounds upon which the constructive trust is based must be established by evidence so cogent, clear and convincing, as to exclude all reasonable doubt from the mind of the court. *Id.* at 549; *March v. Gerstenschlager*, 436 S.W.2d 6, 8 (Mo.1969).

A constructive trust may be imposed where, as the result of violation of confidence or faith reposed in another, or fraudulent act or conduct of such other, the plaintiff has been wrongfully deprived of, or has lost, some title, right, equity, interest, expectancy, or benefit, in the property which otherwise and but for such fraudulent or wrongful act or conduct, he would have had. *U.S. Fidelity and Guaranty Company v. Hiles, supra* at 137.

Thomas argues that the Buckner congregation paid for the church property and buildings and that the RLDS World Church would be unjustly enriched if it is allowed to retain ownership of the Buckner church property or in the alternative Thomas and the Buckner congregation are entitled to damages.

The Buckner congregation members contributed $1750 toward the purchase of the first tract of land from Mildred Wallace in 1952. The Buckner congregation borrowed funds from the RLDS World Church for the remaining land acquisition and construction expenses for the main church building in two loans totaling $12,500. The loans bore nominal interest at the rate of 1%. The loans were repaid in two general ways; by donations placed in the offering plate by members of the Buckner congregation, and by the proceeds from auction sales of items donated by members of the Buckner congregation, members of other RLDS congregations and other friends of the church within the Buckner area. The first loan in the amount of $7500 was retired in 1959. The second loan in the amount of $5000 was repaid in 1956.

In 1965 and 1966, an educational wing was added to the main church building financed by two loans from the RLDS World Church in the total amount of $15,-000. Those loans were assumed, with approximately $11,000 or $12,000 still outstanding, by the Blue Valley Stake Outreach and Development Program in 1968. The loans were paid off by the Blue Valley Stake fund in 1974.

In 1979 the Buckner church parking lot was paved with financing from a loan by the RLDS World Church in the amount of $14,000. The Blue Valley Stake Outreach and Development Program again assumed responsibility for retiring this loan. The Buckner congregation did pay for a new roof and air conditioning system through direct contributions without the help of the Blue Valley Stake Outreach and Development Program.

All of the Buckner congregation's collection money was sent each week to the Stake with a designation by the congregation members on their collection envelopes whether their donations were to be applied

to local or RLDS World Church purposes. The Stake paid the bills of the congregation and the RLDS World Church sent money back to the congregations.

The record does not support a finding that the trial court erred by finding that there were not any fraudulent or otherwise wrongful acts or conduct on the part of the RLDS World Church which caused Thomas and his followers to have been deprived of or to have lost any title, right, equity interest, expectancy or benefit as to the Buckner church property sufficient to impose a constructive trust. Thomas and his followers freely made their contributions to the RLDS World Church and accepted and participated in the benefits derived therefrom.

## V.  PURCHASE MONEY RESULTING TRUST

■ Thomas argues as an additional point on appeal that the trial court erred by not imposing a purchase money resulting trust in favor of the Buckner congregation.

A resulting trust may arise in favor of one who, in whole or in part, pays the purchase price for property, and directs that the vendor transfer the title of the property to another. *Haas v. Haas,* 669 S.W.2d 592, 595 (Mo.App.1984). A resulting trust is implied by law from the acts and conduct of the parties and the circumstances which surround the transaction, and thus a resulting trust may be established by parol evidence. *Estate of Kling,* 736 S.W.2d 65 (Mo.App.1987); *Duncan v. Rayfield,* 698 S.W.2d 876 (Mo.App.1985); *Ellis v. Williams,* 312 S.W.2d 97, 101 (Mo. 1958). Where one pays the purchase price for land with legal title taken in another, a presumption arises that the latter holds the property under a resulting trust for the payor. *Estate of Kling,* supra at 67. *Dallas v. Dallas,* 670 S.W.2d 535, 539 (Mo.App. 1984) Absent evidence to the contrary, it is presumed that the payor did not intend to make a gift. *Estate of Kling,* supra at 67; *Jones v. Anderson,* 618 S.W.2d 252, 255 (Mo.App.1981).

The burden of establishing the elements of a resulting trust lies with the party seeking to establish the resulting trust.

*Estate of Kling,* supra at 67. The burden of proof to establish a resulting trust is an extraordinary one. The party seeking to establish a resulting trust has the burden to show its existence by clear and convincing evidence sufficient to exclude all doubt from the mind of the court. *Duncan v. Rayfield,* supra at 879; *Dallas v. Dallas,* supra at 538; *Haas v. Haas,* supra at 596.

The acts and conduct of the parties herein together with the surrounding circumstances support the finding of the trial court that the money received by the RLDS World Church from the Buckner congregation constituted gifts from the Buckner congregation which did not create an equitable interest in the church property. Thomas' effort to attribute error to the trial court for not having imposed a resulting trust is not supported by the record or the law herein.

## VI.  CHURCH DOCTRINE

Thomas' final arguments on appeal are that the trial court erred by declaring the RLDS World Church to be the owner of the Buckner church property because the Buckner congregation followed original Church Doctrines and the RLDS World Church deviated from their procedural doctrines. Thomas argues that the trial court erred by not allowing evidence to support this position.

As discussed previously herein, under point one, *Church Property,* Missouri has adopted the neutral principles approach as the exclusive method for the resolution of church property disputes. *Presbytery of Elijah Parish Lovejoy v. Jaeggi, supra* at 467. Under this approach the trial court properly refrained from resolving the dispute on the basis of religious doctrine and procedures. Furthermore, as discussed previously herein, under point three, *Injunctive Relief–Failure to Follow Church Procedure,* pursuant to the First Amendment, religious controversies are not generally the proper subject of civil court inquiry and a civil court must accept the ecclesiastical decisions of church tribunals as it finds them. *Serbian Eastern Orthodox Diocese*

*v. Milivojevich, supra* 426 U.S. at 713, 96 S.Ct. at 2382.

The judgment of the trial court is affirmed.

All concur.