In re the MARRIAGE OF: Eleanor C. HARP and Chester G. Harp.

Eleanor C. Harp, Petitioner–Appellant–Respondent,

v.

Chester G. Harp, Respondent–Respondent–Cross–Appellant,

and

Wayne Harp, Defendant–Respondent.

Nos. SD 28865, SD 28870.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 11, 2008.

Rehearing Denied Dec. 30, 2008.

Mary E. Boner, Jackson, MO, for Appellant.

Walter S. Drusch, Cape Girardeau, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Appellant Eleanor Harp ("Wife") filed a petition against Respondent Chester Glen Harp ("Husband") for dissolution of marriage. Wife subsequently amended her petition to include claims against Husband's adult son from a previous marriage, Glen Wayne Harp ("Stepson"). Wife's claim against Stepson alleged that she had transferred certain interests in real property to him under duress. Specifically, Wife claimed that Stepson had coerced her into: 1) giving him a deed to real property she owned in Leopold, Missouri (the "Leopold House"); and 2) making a significant down-payment and subsequent payments toward the purchase of a residence located in Marble Hill (the "Log House") that was deeded solely to Stepson. The trial court entered a judgment that dissolved the marriage, divided the marital property, and denied Wife's claims against Stepson.

On her appeal, Wife alleges two points of error: 1) the trial court erred in finding that her conveyance to Stepson of the Leopold House by general warranty deed was not made under duress resulting from Stepson's undue influence on her; and 2) the trial court misapplied the law when it found that Wife did not establish her right to an equitable ownership interest in the Log House.

On his cross-appeal, Husband argues the trial court erred by granting Wife a lien against real property (the "Highway 34 House") purchased during the marriage and titled solely in his name because it should have been deemed his separate property under the parties' antenuptial agreement. Finding no error, we affirm the judgment.

## I. Statement of Facts and Procedural History

When viewed in the light most favorable to the trial court's judgment, *Landers v. Sgouros*, 224 S.W.3d 651, 655 (Mo.App. S.D.2007), the facts are as follows. In 1988, Wife was seriously injured in an automobile accident that also resulted in the death of the man who was her husband at the time ("the 1988 accident"). Wife and her deceased husband had one daughter together. Wife eventually recovered from the 1988 accident and married Husband in October of 1991. Two days before their marriage, Wife and Husband entered into an antenuptial agreement whereby the parties agreed, in pertinent part, that any "separate property" (as defined by the terms of the agreement) owned by either of them at any time would remain their own separate property.

At the time of the marriage, Wife owned the Leopold House and some investments derived from settlement proceeds she had received as a result of the 1988 accident. Shortly after their marriage, Wife and Husband moved into the Leopold House. In February of 1992, Wife and Husband were both injured in an automobile accident ("the 1992 accident"). Wife and Husband received a total of $250,000 (less attorney fees) in an apparent settlement of claims they had arising from the accident. Whether any apportionment of those proceeds between Husband and Wife occurred based on their relative injuries is unknown.

Not long after the 1992 accident, Husband began to physically and emotionally abuse Wife and take advantage of her financially. As a result, Wife went from being "full of energy" to "never ha[ving] energy to do anything." In May of 1995, Husband used some or all of the proceeds from the 1992 accident to purchase the Highway 34 House and had it titled solely in his name. Husband and Wife moved into the Highway 34 House sometime shortly after it was purchased.

In May of 1996, Stepson moved from California to Missouri to live with Husband and Wife. Stepson had previously been homeless and came to Missouri with few, if any, assets. Stepson and Husband did not get along well. Wife and Stepson, however, developed an affectionate relationship; the exact extent and nature of which is not clear from the record.

In September of 1996, Wife and Stepson both signed a contract to purchase the Log House. Wife used $20,000 of her pre-marital funds as a down-payment, and Wife and Stepson both signed the promissory note for the remainder of the purchase price and the deed of trust. The general warranty deed, however, conveyed the property solely to Stepson. On the same day the Log House was conveyed to him, Stepson executed a beneficiary deed to the Log House naming Wife as the beneficiary. Less than a month later, Wife and Husband separated, and Wife and Stepson moved into the Log House.

The trial court found that after moving into the Log House, Stepson's behavior toward Wife was "exploitive and even bullying at times." Evidence was presented that Stepson tried to limit Wife's contact with other people; was spending Wife's money; and was often cruel, controlling, manipulative, and even abusive to Wife. Wife moved out of the Log House at some point during 1997 or 1998 and began living with her nephew, Danny Seiler ("Nephew"). Wife appointed Nephew as her attorney-in-fact at that time, and for approximately three-and-a-half months he paid her bills using her bank account, purchased her an automobile, and scheduled her doctor appointments. After a couple of months, however, Wife moved back into the Log House with Stepson and revoked Nephew's power of attorney.

In August of 1999, Wife purchased an annuity that listed Stepson as the primary beneficiary and Wife's daughter and Nephew as secondary beneficiaries. In September of 2000, Wife transferred (by general warranty deed) the Leopold House to Stepson subject to a life estate she reserved for herself. Sometime in 2000, Wife moved out of the Log House and stopped making any payments on the promissory note.

In its dissolution judgment, the trial court awarded Wife a lien for half of the Highway 34 House's appraised value. The trial court found that all of the proceeds from the settlement of the 1992 accident claim were marital property and that the parties' antenuptial agreement did not require those proceeds to be treated as separate property. Because Husband had used some or all of the proceeds from the 1992 accident settlement to purchase the Highway 34 House, the trial court found that the Highway 34 House was marital property subject to division by the court.

In denying Wife's claims against Stepson based on undue influence, duress, and fraudulent misrepresentation, the trial court found that Wife had failed to meet her burden of proof. The trial court found there was clear and convincing evidence that Wife's down payment on the Log House was a gift to Stepson and the subsequent payments she made while residing there were either gifts or represented her share of the household expenses. The trial court did not believe Wife's claim that she transferred the Leopold House to Stepson under duress resulting from his undue influence over her, finding instead that the consideration for this transaction was some degree of affection for Stepson and a desire to provide for him. Other relevant facts will be set forth below as necessary to address the points to which they relate.

## II.  Discussion

### Point I (# 28865):  The Leopold House

Both of Wife's claims against Stepson asked the trial court to set aside warranty deeds and grant her an equitable interest in the properties conveyed by them.  "A suit to set aside a deed is an action in equity.  The standard of review in a court-tried action in equity is that of a judge tried case:  the trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or unless it erroneously applies the law."  *Id.* (internal citations omitted).  We defer to the trial court's credibility determinations, view all evidence and inferences in the light most favorable to the judgment, and disregard all contrary evidence and inferences.  *Ortmann v. Dace Homes, Inc.*, 86 S.W.3d 86, 88 (Mo.App. E.D.2002).

In Point I, Wife argues the trial court erred in finding that her conveyance of the Leopold House to Stepson in his sole name was not the result of duress based on Stepson's undue influence over her.  Although it is not set forth in her point relied on, Wife claims in the argument portion of her brief that the trial court misapplied the law to the facts of this case because there was clear, cogent, and convincing evidence showing that Wife and Stepson were in a fiduciary or confidential relationship.  Because of that special relationship, Wife contends she was entitled to a presumption that undue influence was exerted over her and that Stepson failed to rebut that presumption.  The argument that Wife was entitled to an evidentiary presumption that would have to be rebutted by Stepson was never made to the trial court.  Because Wife believes she made a prima facie showing of undue influence, she argues we should set aside

the Leopold House deed and issue an order quieting title in fee simple to Wife.

Generally, a party on appeal must "stand or fall" by the theory presented to the court below.  *Kleim v. Sansone*, 248 S.W.3d 599, 602 (Mo. banc 2008).  Because Wife did not present this particular argument to the trial court, she is not entitled to raise it for the first time here.  Assuming, for the sake of argument, that Wife's claim had been properly preserved for our review, it would face yet another potential procedural bar.  Wife's Point I relied on states:

THE TRIAL COURT ERRED BY HOLDING THAT THE LEOPOLD HOUSE DEED WAS NOT EXECUTED DUE TO AN EXERCISE OF UNDUE INFLUENCE BECAUSE ELEANOR HARP'S FREE AGENCY AND VOLUNTARY ACTION WERE THWARTED BY WAYNE HARP AND SHE WAS ACTING UNDER DURESS IN THAT THERE WAS CLEAR, COGENT AND CONVINCING EVIDENCE THAT HE CONNIVED TO CREATE AN ESTRANGEMENT BETWEEN ELEANOR HARP AND HER DAUGHTER AT OR NEAR THE TIME OF THE EXECUTION OF THE DEED, WAYNE HARP WAS EXPLOITING AND BULLYING ELEANOR HARP, WAYNE HARP WAS CONTROLLING ELEANOR HARP'S MEDICATIONS, ELEANOR HARP WAS HALLUCINATING AND SUFFERING DEBILITATING HEADACHES, WAYNE HARP WAS TELLING ELEANOR HARP THAT HER FAMILY HATED HER AND WOULD STEAL HER HOUSE IF SHE DID NOT DEED IT TO HIM, AND WAS CLEARLY MANIPULATING HER AND IN THAT ELEANOR

HARP DID NOT INTEND TO DELIVER THE DEED TO WAYNE HARP.

Rule 84.04(d)[1] provides that each point relied on shall: "(A) identify the trial court ruling or action that the appellant challenges; (B) state concisely the legal reasons for the appellant's claim of reversible error; and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d). Because Wife's point did not include the argument that she was entitled to an evidentiary presumption as the legal reason supporting her claim of reversible error, it is in violation of Rule 84.04(d).

▮ In any event, Wife's claim would fail even if she had properly preserved and presented it. "A suit to set aside a deed is an action in equity." *Landers,* 224 S.W.3d at 655. "A deed procured by the exercise of undue influence is rendered invalid." *Pike v. Pike,* 609 S.W.2d 397, 402 (Mo. banc 1980). "The test is whether the grantor's free agency and voluntary action were thwarted." *Id.* "While neither direct testimony nor overt acts operating at the moment of the instrument's execution need be shown, the facts and circumstances from which undue influence can be inferred must be proved by clear, cogent and convincing evidence," *Id.* at 402–03 (internal citations omitted) and "[i]t is necessary that the undue influence be operative at the time of execution of the deed sought to be set aside." *Robertson v. Robertson,* 15 S.W.3d 407, 413 (Mo.App. S.D. 2000).

▮ The party alleging undue influence must establish three elements before a presumption of undue influence will be applied in a case involving a deed for land: 1) the existence of a confidential or fiduciary relationship; 2) a deed favoring the

fiduciary; and 3) "some evidence 'from which the [c]ourt can infer undue influence.'" *Duvall v. Brenizer,* 818 S.W.2d 332, 335 (Mo.App. W.D.1991). In determining whether a fiduciary relationship existed, "equity does not limit the circumstances under which it may be found but will look for those instances where a special confidence is reposed on one side with a resulting influence on the other." *Robertson,* 15 S.W.3d at 412. "The question is always whether or not trust is reposed with respect to property or business affairs of the other." *Id.*

In this case, there was substantial evidence to support a conclusion that no fiduciary or confidential relationship existed between Wife and Stepson. Wife certainly knew how to create such a relationship as demonstrated by the fact that she had previously executed a power of attorney in favor of Nephew and allowed him to use it to manage her financial affairs. Wife's failure to make Stepson her attorney-in-fact after terminating Nephew's power of attorney supports an inference that she did not place any such special confidence in Stepson's ability to manage her financial affairs. Other evidence Wife cites as support for the existence of a fiduciary or confidential relationship between Wife and Stepson was disputed by Stepson and was apparently not believed by the trial court. Without the existence of a fiduciary relationship, no presumption of undue influence arises.

As earlier noted, there must be clear, cogent, and convincing evidence to justify setting a deed aside. *Id.* at 415. "That phrase means that the court should be clearly convinced of the affirmative of the proposition to be proved." *Id.* With this standard of review in mind, we would not have been clearly convinced that the trial

---

1. Unless otherwise indicated, all references to rules are to Missouri Court Rules (2008).

court had misapplied the law to the facts of this case. By the time this transaction took place, Wife and Stepson had been living together for several years. The trial court determined that Wife was not mentally incompetent when the deed was executed; that Wife was temporarily estranged from her daughter when the deed was executed; and that the consideration for the transaction was some degree of affection between Wife and Stepson. In making these determinations, the trial court was faced with conflicting evidence. Determining what evidence to believe is wholly within the province of the trial court. *See Ortmann*, 86 S.W.3d at 88. Point I is denied.

### Point II (# 28865): The Log House

■■■ In Point II, Wife contends the trial court erroneously applied the law to the facts in holding that Wife failed to meet her burden of proof in establishing a right to an equitable interest in the Log House because she made a prima facie case for such an interest and the burden should have thereafter shifted to Stepson to show that Wife intended to give the Log House to Stepson as a gift. Once again, this argument that Wife had made a prima facie case that Stepson failed to rebut was never made to the trial court and may not be raised for the first time on appeal. *Kleim*, 248 S.W.3d at 602. In any event, Wife's contention would fail because the trial court did not misapply the law in finding that Wife did not have an equitable interest in the Log House.

Wife relies on *Kling v. Kling*, 736 S.W.2d 65 (Mo.App. E.D.1987), for the proposition that "[w]here one pays the purchase price for land with legal title taken in another, a presumption arises that the latter holds the property under a resulting trust for the payor. If the payor only pays a part of the purchase price, he acquires a pro tanto interest in the real estate." *Id.* at 67. Because Wife showed that her name was on the contract to purchase the Log House and that she paid $20,000 as a down payment, Wife argues a presumption arose that Stepson held her interest for the amounts she paid on the Log House in a resulting trust. Further, Wife cites *Johannsen v. McClain*, 235 S.W.3d 86 (Mo.App. S.D.2007), for the proposition that "the opposing party needs to introduce substantial controverting evidence in order to rebut the presumption." Wife contends that, under *Johannsen*, the trial court's failure to require Stepson to rebut the presumption of a resulting trust was a misapplication of the law.

■■■■ "A resulting trust is one implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises." *In re Marriage of Hunt*, 933 S.W.2d 437, 442 (Mo.App. S.D.1996). "There must be clear and convincing evidence of the resulting trust," *Id.*, and "the burden of establishing the elements of a resulting trust lies with the party seeking to establish the resulting trust." *Kling*, 736 S.W.2d at 67.

As Wife states, it is generally true that where one pays part of the purchase price for land with legal title taken in another, a presumption arises that the latter holds the property in a resulting trust for the former. *See Id.* This theory assumes that the payor intends to receive the benefits of the purchase, and "*[a]bsent evidence to the contrary*, it is presumed that the payor did not intend to make a gift." *Id.* (emphasis added).

The evidence was undisputed that Wife made the entire $20,000 down payment on the Log House and that Wife and Stepson both signed the promissory note. Based upon this evidence alone, it would have

been proper for the trial court to presume that Stepson held Wife's contributions in a resulting trust. However, in this case, there was evidence to the contrary. The purpose of Wife's down-payment and any subsequent monthly payments was a contested issue. Stepson testified that Wife did not make payments on the house, but did pay for food and other bills. Stepson testified that the reason the Log House was in his name only was because Wife wanted Stepson to have a house because he did not have one, and she already had the Leopold House. Nephew testified that Wife felt sorry for Stepson because he was previously homeless; that one of the reasons Wife bought the Log House was because Stepson had "said he wanted a log cabin of his own;" Wife "wanted to get a log house for Stepson to live in because he always wanted to live in one;" and Wife wanted "[t]o help [Stepson] get it because he didn't have any money to make the down payment on it."

■ The trial court concluded that Nephew's testimony (Wife's own witness and blood-relative) provided clear and convincing evidence that Wife intended the down payment to be a gift to Stepson. As a result, even if Wife's evidence had amounted to a prima facie showing of entitlement to a resulting trust—and her claim of error had been properly preserved for our review—Stepson's and Nephew's testimony would have been sufficient to rebut any such prima facie showing and support the trial court's additional conclusion that any subsequent monthly payments made by Wife were either gifts to Stepson or represented her share of the household expenses while she was living with him. "We defer to the trial judge's superior opportunity to assess the witnesses' credibility" and he or she is free to believe some, part, all, or none of the testimony

given by any witness. *Petrol Properties, Inc. v. Stewart Title Co.*, 225 S.W.3d 448, 453 (Mo.App. S.D.2007). Point II is denied.

### *Husband's Cross–Appeal (# 28870): The Highway 34 House*

■ A trial court has considerable discretion in dividing marital property and its decree should stand unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Mistler v. Mistler*, 816 S.W.2d 241, 245 (Mo.App. S.D.1991). As in Wife's claims against Stepson, we again defer to the trial court's credibility determinations, view all evidence and inferences in the light most favorable to its judgment, and disregard all contrary evidence and inferences. *Ortmann*, 86 S.W.3d at 88.

■ Husband contends the trial court erred in awarding Wife a lien against the Highway 34 House because the parties' antenuptial agreement required it to be considered his sole and separate property. We disagree.

■ Property acquired during marriage, regardless of whether the title is held individually or in some form of joint ownership between the spouses, is presumed to be marital property absent a showing that it falls within one of the categories listed in section 452.330.2,[2] including "property excluded by valid written agreement of the parties." Section 452.330.2(4). "The party claiming that property is non-marital bears the burden of proving the property is separate property by clear and convincing evidence." *In re Marriage of Maninger*, 106 S.W.3d 4, 9 (Mo.App. E.D.2003). It is undisputed that

---

**2.** All references to Missouri statutes are to RSMo 2000, unless otherwise indicated.

690

the Highway 34 House was purchased during the marriage.

While titling the Highway 34 House solely in his own name would not, of itself, be sufficient to overcome the presumption that it was marital property, Husband argues it was "separate property" under the terms of the antenuptial agreement which defined "separate property" to include, in relevant part:

> (b) All real and personal property, all life insurance policies, all annuities, all pension, profit sharing, stock bonus and all other property, assets, or estate which may be purchased, acquired or received in any manner by each of the parties after their marriage;

At trial, Husband testified that he purchased the Highway 34 House with his "separate" funds from the 1992 accident but did not present any evidence that established what amount or percentage of the 1992 accident proceeds belonged to him. Wife testified that she had never received any money as a result of the 1992 accident. Husband essentially contends that because he testified the source of funds for the purchase of the Highway 34 House was his separate portion of the 1992 accident proceeds, the Highway 34 House he then purchased with those proceeds remained his separate property under the antenuptial agreement.

■ "When characterizations of property as marital or separate rest on an assessment of witness credibility, we defer to the trial court's determination of that credibility." *Id.* The trial court was not required to believe Husband's testimony that he used only his separate funds to purchase the Highway 34 House and noted that "[t]here was no persuasive evidence as to the amount of the actual net proceeds of the accident paid to either Husband or Wife, nor was there any persuasive evidence as to how much of the proceeds were attributable to the injury of Husband or to Wife." Husband failed to prove by clear and convincing evidence that the funds used to purchase the Highway 34 House were his separate property and the trial court appropriately categorized the home as marital property.

Husband does not contest the amount of the lien and "[a] trial court is vested with considerable discretion in dividing marital property; an appellate court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *In re Marriage of Tullier,* 989 S.W.2d 607, 614 (Mo.App. S.D.1999). Here the lien was for 50% of the home's value. Husband's point is also denied and the judgment of the trial court is affirmed.

PARRISH, J., Concurs with separate opinion.

RAHMEYER, J., Concurs.

JOHN E. PARRISH, Judge, concurring.

I concur in the result reached in the appeal by Eleanor Harp, No. 28865, regarding property rights of Wayne Harp in certain real estate. I do so because the judgment made no change to legal title to the non-marital real estate in question. I concur in the part of the opinion directed to Chester Harp's appeal, No. 28870.

There appears to have been no issue raised in the trial court or on appeal with respect to the procedure utilized by Eleanor Harp in challenging the property rights of Wayne Harp as part of a dissolution of marriage action to which Wayne Harp was otherwise not a party. It does not appear that Chester Harp claimed any interest in that real estate. As such, I question whether that claim should have been part of the dissolution of marriage

case.* For that reason, I concur only in the result in No. 28865. I fully concur in the part of the principal opinion directed to No. 28870.

---

* In my opinion, including a third person as a party in a dissolution of marriage action should occur only where that party is required in order to determine issues related to the dissolution action, such as resolving questions related to property distribution (*see, e.g.,*

*Engeman v. Engeman,* 123 S.W.3d 227 (Mo. App.2003)), or addressing whether child custody should be awarded to a third party (*see, e.g., Walters v. Walters,* 113 S.W.3d 214 (Mo. App.2003)).