**Marsha HAGAN, Respondent,**

v.

**Mark A. HAGAN, Appellant.**

No. SD 34563

Missouri Court of Appeals,
Southern District,
Division Two.

FILED: October 11, 2017

Appellant's attorney: Fawzy T. Simon.

Respondent's attorneys: Joshua P. Jones, Osceola and Jeffrey R. King.

## DANIEL E. SCOTT, J.

Mark Hagan challenges the overall property division and four rulings as to specific property in the judgment dissolving his marriage. We affirm.

### Background [1]

■ Mark and Marsha had been married more than 30 years when she caught him in his second affair, this time with an 18-year-old employee of his bowling alley. Mark refused Marsha's repeated requests to end the affair, so she eventually moved out. The 18-year-old moved into the marital home with Mark, where she still lived at the time of trial.

After Marsha petitioned to dissolve the marriage, the court entered an order requiring preservation of marital assets. Ignoring this, Mark conveyed his bowling alley to his father's trust without the consent of Marsha or the court or notifying his own divorce lawyer. This was among Mark's several "tomfooleries" (as the court called them elsewhere on the record) cited in the final judgment:

> [Mark] squandered, secreted and conveyed to others (particularly his parents) significant assets that could have been divided between the parties. These assets include, without limitation, (a) a significant number of firearms that [Mark] claims to have disposed of prior to separation, but for which he was completely unable to present any evidence supporting such dispositions, (b) a debt of $16,500 owed to the parties by Springfield Clutch & Gear, an entity controlled by [Mark's] father, that [Mark] received payment on but did not account for or share with [Marsha], (c) a 2002 Polaris Camo 4-wheeler sold by [Mark] prior to trial, and [Mark] retained all of the proceeds thereof exclusively for himself, and (d) substantially all of the assets of Buffalo Bowl & Arcade, L.C., an entity that owned and operated a bowling alley business, which assets were conveyed by [Mark] to his parents in February 2015, without notice to [Marsha] or this Court, and without [Mark] causing any appraisals or other valuations or due diligence to have been conducted in order to determine the value of such assets prior to conveying them.[2]

Such actions, and the trial court's credibility determinations, led to the court's stated intent to split marital property "65/35" in Marsha's favor. Ultimately, as calculated and reflected in the final judgment, Marsha received 59.4% of the net marital estate.

---

1. We accept as true all evidence and reasonable inferences that support the judgment, ignoring contrary evidence and inferences (***Landewee v. Landewee***, 515 S.W.3d 691, 694 (Mo. banc 2017)), and summarize the record accordingly. As the parties share the same surname, we refer to them by their first names, intending no disrespect.

2. To be clear, these were not Mark's only property misdealings in the record.

### General Observations

Mark's points each criticize property classification, valuation, or division. These are areas where the trial court enjoyed broad discretion, so we will interfere only if the resulting division was so one-sided as to show abuse of discretion, which is Mark's burden to prove. *See Landewee*, 515 S.W.3d at 694.

Even more fundamentally, we can reverse this court-tried judgment *only* if no substantial evidence supports it, *or* it is against the weight of the evidence, *or* it erroneously declares or applies the law. *Landewee*, 515 S.W.3d at 694 (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). These being the *only* reasons to reverse any court-tried case, each of Mark's points should specify some *Murphy v. Carron* basis for relief. *See Marriage of Sivils*, No. SD34633, 526 S.W.3d 375, 383–85, 2017 WL 4049529 (Mo. App. Sept. 12, 2017); *Smith v. Great Am. Assur. Co.*, 436 S.W.3d 700, 703-04 & n.3 (Mo. App. S.D. 2014).

None do, nor are they salvaged if we interpret them as *Murphy* evidentiary challenges (the best "fit" for each) because their supporting arguments ignore *Houston v. Crider*, 317 S.W.3d 178, 186-89 (Mo. App. S.D. 2010), and its progeny, rendering them analytically useless, unpersuasive, and of no support for Mark's challenges. *See Sivils*, 526 S.W.3d at 384–85; *Marriage of Geske*, 421 S.W.3d 490, 500-02 (Mo. App. S.D. 2013); *Houston*, 317 S.W.3d at 188, 189.

We could affirm the judgment on this basis alone, but will briefly note other reasons to deny Mark's points, which we take out of order for convenience.

### Point IV

Five days before trial, Mark signed on oath "under penalty of perjury" his Fourth Amended Statement of Marital and Non-Marital Property and Liabilities, then filed it on the first day of trial where it was admitted into evidence. In it, Mark listed the parties' dog-breeding website as marital property, valued it at $10,000, and asked the court to award it to Marsha.

The court awarded it to Mark instead, who now claims this asset did not exist, "had no value, [and] was not subject to award or division by the trial court."

Although tempted to reply more strongly, we will say only that Mark cannot complain of error (if any) that he invited. *Marriage of Foster*, 391 S.W.3d 500, 504 (Mo. App. S.D. 2013). Point denied.

### Points III and V

These complaints share similar failings and fates. The first challenges the award as marital property of a skid-loader that Mark claims was owned by a third party. Ownership of this asset was contested at trial and subject to conflicting proof. The court implicitly credited Marsha's evidence as it was entitled to do. " 'Determining what evidence to believe is wholly within the province of the trial court.' " *Landewee*, 515 S.W.3d at 697 (quoting *Marriage of Harp*, 278 S.W.3d 681, 688 (Mo. App. S.D. 2008)). Point III fails.

Point V disputes the court's $66,000 valuation of the bowling alley business, which also was a contested trial issue.[3] After hearing the evidence, the court noted that the parties had "cooked the books from day one" and had no appraisal or inventory of assets for the court to consid-

---

**3.** Mark valued the bowling alley at $0—no assets, no debt. Marsha's $66,000 figure was based on a gross value ($300,000) less out-standing principal debt had Mark made the required payments ($234,000). She valued the bowling alley's assets at $300,000 because: (1)

er. Coupling these observations with the court's credibility determinations, we find no error, much less an abuse of discretion, in the court adopting a value consistent with Marsha's evidence. We deny Point V.

## Point II

 Mark alleges that the trial court divided the parties' interest in a family-owned company in a manner inconsistent with the company's operating agreement. He admits he did not raise this claim below, so he cannot raise it here. *Brown v. Brown*, 423 S.W.3d 784, 788 & n.5 (Mo. banc 2014); *Credit Investments, Inc. v. Dieter*, 504 S.W.3d 253, 254-55 (Mo. App. S.D. 2016); Rule 78.09. Point denied.

## Point I

Mark complains that Marsha received "approximately 77%" of marital assets, but offers no mathematical support for this figure. Rather, Mark cites one sentence from counsel's post-trial email correspondence that was not evidence (*Kulaga v. Kulaga*, 149 S.W.3d 570, 573 n.6 (Mo. App. W.D.2004)), and is wholly unpersuasive when contrasted with the judgment's extensive spreadsheet calculations that Mark does not dispute and that show Marsha received 59.4% of net marital assets. We deny Point I and affirm the judgment.[4]

NANCY STEFFEN RAHMEYER, C.J./P.J.—CONCURS

JEFFREY W. BATES, J.—CONCURS

Mark had discussed selling the business to potential buyers for $300,000; (2) the $250,000 acquisition price had not been fair market value, but a "special deal" offered by father to son; and (3) the business would have remained profitable had Mark not mismanaged it. The court found no credible evidence

of a valid, collectible debt to Mark's father for the bowling alley.

4. We would be remiss not to acknowledge the trial court's patience and forbearance in dealing with these unduly contentious parties and proceedings.